COMMONWEALTH vs. DAVID J. CERIA.

Suffolk. January 26, 1982. — February 23, 1982.

Present: GOODMAN, CUTTER, & GREANEY, JJ.

*Arrest. Identification. Practice, Criminal,* Identification.

A defendant's flight when police officers attempted to stop him for questioning as he was riding a moped in an area where a number of sexual assaults had been committed by an individual who usually approached his victims on a moped, and the defendant's evasive and inconsistent answers concerning the ownership of the moped after he was apprehended by police officers constituted probable cause to arrest the defendant for larceny of the moped. [233-235]

Where police officers had probable cause to arrest a defendant for larceny of a moped, it was immaterial that in making the arrest the officers may have been influenced by a desire to obtain evidence to aid in the investigation of unrelated crimes. [235-236]

Where a defendant charged with rape and assault had been ordered to be present in court for a probable cause hearing, where he had failed to make a written motion prior to the hearing for an in-court lineup for identification purposes, and where efforts to arrange the lineup would have delayed court proceedings, the judge did not abuse his discretion in denying the request for a lineup despite an agreement between the prosecutor and defense counsel that the defendant would be kept away from the courtroom until an oral request for a lineup could be made. [236-237]

INDICTMENTS found and returned in the Superior Court on May 19, 1978.

A pretrial motion to suppress evidence was heard by *Alberti*, J., and the cases were tried before *Adams*, J.

*Kirk Y. Griffin* for the defendant.

*Robert A. Marra, Jr.*, Legal Assistant to the District Attorney (*Peter Grabler*, Assistant District Attorney, with him) for the Commonwealth.

GREANEY, J. After a trial before a jury in the Superior Court, Ceria was convicted on four indictments charging

him with the knife point assault and rape of two women. Prior to trial, he moved to suppress the victims' identifications on the grounds (1) that his arrest on unrelated charges which led to the identifications was not based on probable cause; (2) that his arrest was merely a pretext for obtaining his photograph for investigation of the sex crimes; and (3) that the identifications made at the probable cause hearing were unduly suggestive. After hearing, the motion was denied. We find no error.

The judge made detailed findings of fact which the defendant does not challenge. We summarize those findings. Prior to April 4, 1978, Metropolitan District Commission police officers were advised that between November, 1977, and March, 1978, four women had been sexually assaulted while walking or jogging on the Esplanade.[1] The officers possessed a composite sketch of the assailant prepared by a police artist with the assistance of some of the victims. They also knew that the assailant usually approached his victims on a yellow motorized bicycle (moped).

On April 4, 1978, at approximately 7:00 P.M., Officers Dean and Powers stationed themselves in a marked cruiser under the Longfellow bridge at a point where they could observe (through binoculars) the walkways in and around the Esplanade. At the same time, Detective White positioned himself in an unmarked police vehicle at a second point where he could assist the other officers if necessary.

Shortly after the surveillance was established, Officer Dean observed a woman jogging in the vicinity of the Longfellow bridge, followed closely by a man on an orange moped who resembled the composite sketch. While Dean advised White of the situation, Powers approached the moped on foot, identified himself in a loud voice as a police officer, and asked the operator to stop. The operator (the defendant) shut out his lights and immediately "took off" at approximately thirty to thirty-five miles per hour. With

---

[1] The Esplanade is a park and recreational area located on the banks of the Charles River near downtown Boston.

both police vehicles in pursuit, the defendant reached Storrow Drive and cut diagonally across it, nearly causing an accident as oncoming automobiles braked and swerved to avoid him. He proceeded down a street, and then returned to Storrow Drive, where he was finally stopped in a vehicular tunnel near the Government Center exit.

The defendant gave the officers his correct name and address but indicated that he did not have a license to operate the moped. When asked about its ownership, the defendant stated "first that he was the owner, then indicated that his father was the owner, then his guardian, then his foster father." The judge found that, at this juncture the officers "were reasonably confused by what . . . were apparently evasive answers. They cited Ceria for operating to endanger and operating without a license [and] . . . then arrested [him] for the cited offenses and for larceny of over $100 of the moped from [a] person or persons unknown."

The defendant was booked on these charges at the Lower Basin police station. Since the station lacked some of the necessary booking equipment, he was then taken to the Old Colony Station to be fingerprinted and photographed. See G. L. c. 263, § 1A. Ceria was then returned to the Lower Basin station, at which point his foster father and guardian arrived. The guardian established that he owned the moped, and the defendant was released. The judge found, however, that the question of the moped's ownership "was not clear until after the photographing and fingerprinting stage at the Old Colony station."

The next morning the defendant's photograph was inserted in an array by the detective in charge of the rape investigations, and the array was shown to the two victims in these cases. This procedure, which has not been challenged as suggestive, led to the defendant's positive identification by both victims. The present charges followed.[2]

---

[2] The original charges for operating without a license, operating to endanger and larceny were ultimately dropped.

1. The defendant's motion to suppress the photographic identification turns on the validity of the arrest pursuant to which his photograph was taken. The parties apparently agree that the defendant could not lawfully have been arrested for two of the offenses then charged.[3] The motion judge ruled that the defendant had lawfully been arrested on the third charge, larceny of the moped. Accepting the judge's findings of fact as having adequate support in the record, the defendant nevertheless contends that the police

---

[3] In the parties' view, a person driving a moped cannot be arrested for operating without a license (G. L. c. 90, § 1B, inserted by St. 1976, c. 261, § 4) or for operating to endanger (G. L. c. 90, § 24[2][a]). This view is based on the fact that G. L. c. 90, § 1, as amended by St. 1976, c. 261, §§ 2, 3, now defines a "motorized bicycle," and specifically excludes such vehicles from the definition of "motor vehicles" as used throughout the chapter. This may not be an entirely correct interpretation of the law. General Laws c. 90, § 1B, requires that a "motorized bicycle shall not be operated on any way by any person not possessing a valid driver's license or learner's permit," and the statute renders the operation of motorized bicycles on public ways "subject to the traffic laws and regulations of the commonwealth." Under G. L. c. 90, § 21, a police officer may arrest anyone operating a motor vehicle on a public way who does not have a license so to operate in his possession. The language of §§ 1B and 21 would not authorize the defendant's arrest for operating without a license. It has been held, however, that § 21 "does not by implication cut down the common law authority of an officer" to arrest. *Commonwealth* v. *Gorman*, 288 Mass. 294, 296 (1934). The defendant's reckless operation on Storrow Drive would have warranted the police in making a common law arrest for breach of the peace if the defendant had been operating an automobile. See *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 280-281 (1974). In view of the language in G. L. c. 90, § 1B, making operation of a motorized bicycle subject to the "traffic laws," we doubt that the Legislature intended to exempt operators of motorized bicycles from such offenses as operating under the influence or operating to endanger. See also first paragraph of G. L. c. 90, § 1.

We pass the question, however, since the defendant's arrest for larceny (as will be next discussed) was proper. Any mistaken subjective impressions by the officers about their right to arrest for the vehicular offenses are therefore not critical since the determination of the validity of an arrest "is governed by an objective standard," *Commonwealth* v. *Avery*, 365 Mass. 59, 65 (1974), and cases cited, not by the "articulation of the policeman's subjective theory." *Commonwealth* v. *Miller*, 366 Mass. 387, 389 (1974), quoting from *White* v. *United States*, 448 F.2d 250, 254 (8th Cir. 1971), cert. denied, 405 U.S. 926 (1972). See also *Commonwealth* v. *Colitz*, ante 215, 223-224 (1982), and cases cited.

did not have probable cause to make an arrest for larceny. We disagree.

The facts known to the officers when they first approached the defendant justified stopping him to inquire about his activity in the area. See *Commonwealth* v. *Anderson*, 366 Mass. 394, 397-399 (1974); *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763 (1981); *Commonwealth* v. *McCauley*, 11 Mass. App. Ct. 780, 782-784 (1981); *Commonwealth* v. *Crowley, post* 915 (1982). His immediate flight when approached would naturally create a strong suspicion that he had committed a crime or was about to do so. "While flight alone is certainly not sufficient ground to arrest, *Wong Sun* v. *United States*, 371 U.S. 471 (1963), it is a 'strong . . . [indication] of *mens rea*,' *Sibron* v. *New York*, 392 U.S. 40, 66 (1968), and is clearly a factor on which police are entitled to rely in making [a later] decision to arrest." *Commonwealth* v. *Battle*, 365 Mass. 472, 476 (1974). Cf. *Commonwealth* v. *Thibeau, supra* at 764. The fact of flight, considered together with the defendant's admission that he did not possess a license and his evasive and inconsistent answers (see *Commonwealth* v. *Riggins*, 366 Mass. 81, 88 [1974]; *Commonwealth* v. *Chaisson*, 358 Mass. 587, 590 [1971]), could reasonably have led prudent officers to believe that the moped was stolen. The fact that the officers later learned that the defendant had permission to use the moped is not significant, since the existence of probable cause is to be determined "at the moment of arrest," not in light of subsequent events. *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979). In arguing that probable cause was lacking the defendant overlooks the principle that probable cause to arrest does not require the quantum of proof necessary to convict. See *Brinegar* v. *United States*, 338 U.S. 160, 173 (1949); *United States* v. *Ventresca*, 380 U.S. 102 (1965); *Commonwealth* v. *Andrews*, 358 Mass. 721, 723 (1971); *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 744 (1981); *Commonwealth* v. *McCarthy*, 385 Mass. 160, 162 n.5 (1982). We conclude that the information known to the police upon the completion of their field interrogation con-

stituted probable cause to make a valid felony arrest for larceny.

2.  As his second point, the defendant contends that the arrest was "pretextual and conducted with the sole purpose of obtaining evidence to aid in the investigation of the Esplanade assaults." The legitimacy of an arrest for one offense ordinarily will not depend on whether the officer subjectively believed that the arrest might lead to incriminating information regarding another offense.  Rather, police conduct is to be judged "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." *Scott* v. *United States*, 436 U.S. 128, 138 (1978).  See *Sirimarco* v. *United States*, 315 F.2d 699, 702 (10th Cir.), cert. denied, 374 U.S. 807 (1963); *Klinger* v. *United States*, 409 F.2d 299, 304 (8th Cir.), cert. denied, 396 U.S. 859 (1969); *United States* v. *Bugarin-Casas*, 484 F.2d 853, 854 n.1 (9th Cir. 1973), cert. denied, 414 U.S. 1136 (1974); *United States* v. *Hare*, 589 F.2d 1291, 1293-1296 (6th Cir. 1979); *United States* v. *Baker*, 609 F.2d 134, 139-140 (5th Cir. 1980).  Cf. *United States* v. *Mendenhall*, 446 U.S. 544, 554 n.6 (1980).

The reasons underlying this view were succinctly stated in the First Circuit's opinion in *United States* v. *McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977): "The validity of an arrest is normally gauged by an objective standard rather than by inquiry into the officer's presumed motives.  If this were not so, an arrest's validity could not be settled until long after the event; it would depend not only on the psychology of the arresting officer ,but the psychology of the judge."[4]  See also *United States* v. *Miller*, 589 F.2d 1117, 1128 (1st Cir. 1978), cert. denied, 440 U.S. 958 (1979).

---

[4] In *United States* v. *Arra*, 630 F.2d 836, 845 n.12 (1st Cir. 1980), the First Circuit elaborated upon the policy against such inquiry in these terms: "The problem with defendant's approach [questioning an otherwise valid search as a pretext] is both the premium it would place on dissemblance and the difficulty of administering a standard which turns upon motivation.  Motivation is a 'self-generating phenomenon.' Amsterdam, 'Perspective on the Fourth Amendment,' 58 Minn. L. Rev. 349, 437

While "we do not say that there could never be an egregious situation where an arrest on purely colorable grounds might be held invalid as 'pretextual'" (*United States* v. *Mc-Cambridge*, *supra* at 870; see e.g. *Taglavore* v. *United States*, 291 F.2d 262, 265 [9th Cir. 1961]; *Amador Gonzalez* v. *United States*, 391 F.2d 308, 314-315 [5th Cir. 1968]), the demonstrated existence of probable cause to arrest Ceria for larceny seals this arrest off from further attack on its underlying motivations.[5] See *Commonwealth* v. *Walker*, 370 Mass. 548, 560, cert. denied, 429 U.S. 943 (1976), and cases cited.

3. The defendant's last point is that his identification by the victims at the probable cause hearing in the Boston Municipal Court was "unnecessarily suggestive" because the judge would not permit the identifications to be made by way of an in-court lineup. This, he claims, tainted the identifications made at the trial. The defendant had been ordered to be present that day, so that the hearing could go forward. Defense counsel had spoken to the prosecutor, and they had informally agreed that the defendant would be kept away from the courtroom until an oral request for a lineup could be made. The judge, however, took the position that the defendant had been ordered to be in court that day and could not absent himself without leave of court; that there had been sufficient time to file a written motion for an alternative identification procedure; and that efforts to arrange such a procedure would delay the hearing and perhaps disrupt other cases to be heard that day.

---

(1974). As law enforcement personnel learn that a particular motivation is improper because it will render an otherwise valid search invalid, they may not have difficulty convincing themselves that their conduct was prompted not by the improper reason but by the proper one, see discussion in 2. W. LaFave, Search and Seizure 284-285 (1978), and oftentimes it may be little more than guesswork for a court to determine what the true motivation was."

[5] This case bears no resemblance to *United States* v. *Crews*, 445 U.S. 463 (1980), relied upon by the defendant, because the arrest of the defendant in *Crews* was not based on probable cause.

The probable cause hearing was a critical stage of the proceedings which would require the defendant's presence (see *Commonwealth v. Britt*, 362 Mass. 325, 330-331 [1972]; see now Mass.R.Crim.P. 18[a], 378 Mass. 887 [1979]), unless excused by express order of the court. The defendant's request was of the sort which required a written motion stating the grounds therefor with specific supporting reasons. See now Mass.R.Crim.P. 13(a) and (b), 378 Mass. 871-872 (1979). Moreover, "[C]ounsel has a responsibility to be alert and, as far as he thinks necessary or useful, to try to eliminate any suggestive influence; thus he may move *in advance* to have the defendant seated amid the court room audience or for a lineup" (emphasis supplied). *Commonwealth* v. *Cincotta*, 379 Mass. 391, 395 (1979). Since there is no constitutional mandate for these procedures (*Commonwealth* v. *Dickerson*, 372 Mass. 783, 791 [1977]; *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 390-391 [1975]), the disposition of any such motion rests in the sound discretion of the judge. *Commonwealth* v. *Jones*, 362 Mass. 497, 501 (1972). *Commonwealth* v. *Pearsall*, 370 Mass. 413, 415 (1976). In view of the lack of a proper motion, the timing of the request, the prior order expressly requiring the defendant's presence, and the potential for disrupting the proceedings, the judge's action did not constitute an abuse of discretion. See *Commonwealth* v. *Cincotta*, *supra* at 396. If the purpose of defense counsel's request was limited to sequestering the defendant from the witness' sight (a request which was not clearly made), it was properly denied for the reasons already stated.

*Judgments affirmed.*