JUAN ALICEA *vs.* COMMONWEALTH.

Suffolk. May 6, 1991. - June 10, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Controlled Substances. Practice, Criminal*, Required finding, Double jeopardy, Mistrial. *Constitutional Law*, Double jeopardy.

A criminal defendant's motion for a required finding of not guilty on an indictment charging trafficking in heroin in excess of twenty-eight grams was correctly denied, where the evidence presented a jury question as to whether the defendant knew that the heroin was in the vehicle that he operated at the time of his arrest; consequently, common law principles of double jeopardy did not bar the retrial of the defendant following the inability of the jury at his trial in the Superior Court to agree upon a verdict. [387-388]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 17, 1991.

The case was reported by *Abrams*, J.

*Steven J. Rappaport* for the plaintiff.

*James W. Sahakian*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. We consider whether there was sufficient evidence to warrant finding beyond a reasonable doubt that Juan Alicea was guilty of trafficking in excess of twenty-eight grams of heroin (G. L. c. 94C, § 32E (*c*) (1) [1988 ed.]). See *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988). There was no dispute at trial that a police officer found 1,165 bags of heroin inside the door frame of a motor vehicle that the defendant had been operating alone on Route 495 in the Marlborough area at 1:45 A.M. on July 20, 1990. The sole contested issue was whether Alicea knew that the contraband was in the vehicle, thereby warranting a finding that Alicea had possession of the heroin.

The issue comes to us after the trial judge declared a mistrial when the jury failed to reach a verdict. Alicea, who had unsuccessfully presented a motion for a required finding of not guilty to the trial judge, moved to dismiss the indictment on the ground of double jeopardy. A second judge denied that motion. Alicea then sought relief from a single justice of this court on common law double jeopardy grounds. The single justice reported the correctness of the denial of the defendant's motion to this court. We conclude that, because the evidence presented a jury question as to whether Alicea, whom we shall call the defendant, knew that the heroin was in the vehicle that he operated that night, the defendant may be retried without violating principles of double jeopardy established under the common law of the Commonwealth. See *Berry* v. *Commonwealth*, 393 Mass. 793, 798-799 (1985).[1]

A State trooper stopped the vehicle that the defendant was operating for having impeded vision (a severely cracked windshield) and a defective plate light. The defendant produced a valid license and a registration indicating that the vehicle belonged to one Eddie Martinez. The trooper asked the defendant to explain the damage to the windshield and other visible damage, including a "popped ignition." The defendant replied that he was returning to Lowell from New York City, where he had driven with his friend Martinez and where the car had been retrieved from the New York City police department. The defendant produced a fee receipt for the car from the New York City police department, indicating that Martinez had paid towing and storage charges at 2 P.M. on the previous day.

The trooper checked on the operator and the vehicle, and discovered that the vehicle was not stolen. He then asked the defendant if there were any drugs in the vehicle, to which the defendant responded, "No, go ahead and look." The trooper

---

[1]Alicea properly relied on State law in asserting his double jeopardy claim. The Supreme Court of the United States has declined to find a violation of the double jeopardy protections of the Constitution of the United States in the circumstances that Alicea claims exist in this case. See *Richardson* v. *United States*, 468 U.S. 317, 324 (1984).

explained that the defendant was not required to permit any search, and that, if he did permit a search, the defendant could ask that it be stopped, and it then would be stopped, at any time. The trooper then waited for another trooper to arrive, before commencing the search.

The second trooper, on arriving, engaged the defendant in conversation, and the defendant, in response to a question from the second trooper, again indicated that there were no drugs in the car and invited the troopers to search it. The first trooper then began the search. During the first part of the search, which began on the passenger side of the vehicle and included a search of the inside of the door frame on that side, the defendant watched calmly without apparent concern and carried on light conversation with the second trooper. The defendant's demeanor changed "remarkably," however, when the first trooper moved to the driver's side and began to look inside the door frame on that side. The defendant began fidgeting and stammering, and reduced his participation in the conversation with the second trooper.

Using his flashlight and looking down through the window casing, the first trooper observed a partially obscured, gray object at the bottom of the door frame. After pulling up a vinyl-covered door panel along a preformed crease visible on the panel, the first trooper removed a gray package, approximately eight inches by four inches, wrapped in duct tape. The trooper believed the package to contain drugs, and walked toward the defendant with the package. The defendant, on seeing the package in the trooper's hand, began to cry, and said "It's not mine, it's not mine." The defendant denied any knowledge of the contents of the package, and again indicated that neither the package nor the car was his. The first trooper opened the package and found 1,165 bags of 26% heroin weighing more than seventy grams with an approximate street value of $44,000. The trooper arrested the defendant.

The only witnesses at trial were the two troopers. The defendant stipulated that the amount of heroin found was not consistent with personal use. In closing argument, defense

counsel conceded that the package contained heroin and the quantity of the heroin found. The only question was whether the defendant knew that the package was in the car and that it contained contraband. When the jury were unable to agree, the judge declared a mistrial and subsequently denied the defendant's motion for a required finding of not guilty. The issue of the adequacy of the evidence then came before us in the way we previously have described.

Proof of the knowledge required by G. L. c. 94C, § 32E, may be made by circumstantial evidence. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991); *Commonwealth* v. *Pratt*, 407 Mass. 647, 651 (1990). Discovery of secreted contraband in a vehicle with a defendant, without more, is not sufficient to warrant an inference of the knowledge required by the statute. See *Commonwealth* v. *Garcia*, *supra* at 686-687; *Commonwealth* v. *Almeida*, 381 Mass. 420, 421-423 (1980) (possession of firearm). Presence in a vehicle that contains contraband, supplemented by other evidence, however, may suffice to establish the defendant's knowledge that drugs are present. *Commonwealth* v. *Garcia*, *supra* at 687.

We find little support for a finding that the defendant knew of the concealed heroin from (1) the fact that the defendant was traveling on Route 495 in the middle of the night, (2) his consent to the search, or (3) his reaction when the first trooper showed the package to him. These facts, although relevant, combined with the defendant's presence in the motor vehicle, would not alone justify sending the case to the jury.

The strongest evidence on which the Commonwealth relies is the defendant's obvious agitation as the first trooper came closer to discovering the drugs.[2] This behavior was said to have contrasted "remarkably" with his earlier calm demeanor. A jury could reasonably conclude that the defend-

[2]The trooper who conducted the search analogized the process to the childhood game of "hot and cold": "[i]f you watch someone's demeanor, if it changes, you know you're getting closer to where the drugs might be, if there's drugs in the vehicle itself."

ant's behavior tended to show that he knew that there was cause for alarm as the trooper began to inspect the driver's side door. The defendant's change in demeanor supports the inference that he knew that there was something incriminating to be found. See *Commonwealth* v. *Pratt, supra* at 652 (inference of knowledge warranted from defendant's behavior during police search).

The fact that the defendant was operating a vehicle with a "popped" ignition and containing heroin worth thousands of dollars tends to show his knowledge of the presence of the drugs. The inference would be warranted that Martinez, or whoever put the heroin in the vehicle, would not have permitted the defendant to use a vehicle that could easily have been stolen without advising the defendant of the presence of the drugs. This evidence properly goes on the scale against the defendant. Although this circumstance alone might not justify presenting the case to the jury, it is a relevant factor.

Judgment shall be entered in the county court denying Alicea's petition for relief.

*So ordered.*