COMMONWEALTH *vs.* HECTOR R. SANTANA.
COMMONWEALTH *vs.* JOSE C. SUOZO.

Plymouth. February 7, 1995. - May 3, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Search and Seizure*, Arrest, Automobile, Threshold police inquiry. *Constitutional Law*, Search and seizure. *Practice, Criminal*, Required finding. *Controlled Substances*.

The record of a hearing on criminal defendants' motions to suppress evidence seized from their automobile did not support their contention that police officers' stop of the vehicle for a violation of motor vehicle laws, which was objectively reasonable, within the officer's authority as part of their assignment and a matter of routine standard police procedure in such circumstances, was a pretext to stop and search the automobile for controlled substances. [207-210]

On the evidence presented at a hearing on motions to suppress evidence at a criminal trial the judge properly determined that a police officer lawfully seized a bag of cocaine, readily recognizable as such, from beneath the passenger seat of an automobile, where the officer's having leaned into the automobile was reasonable in the circumstances and the bag of cocaine was in plain view when he did so. [210-212]

Police officers, who lawfully stopped an automobile for a violation of motor vehicle laws, were warranted in the circumstances in believing that the driver posed a danger to the safety of the officers or others by his remaining in the vehicle, and the officers were justified in ordering the driver out of the vehicle. [212-213]

The judge at the trial of an indictment for trafficking in cocaine correctly denied the defendant's motion for a required finding of not guilty, where the evidence was sufficient to warrant the jury's conclusion that the owner and operator of an automobile knew that there was cocaine in his vehicle and that he had the ability and intention to exercise dominion and control over it. [214-215]

INDICTMENTS found and returned in the Superior Court Department on September 28, 1992.

Pretrial motions to suppress evidence were heard by *R. Malcolm Graham*, J., and the cases were tried before *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Daniel W. Rice* for Hector R. Santana.

*Jane E. Ross* for Jose C. Suozo.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. On the afternoon of June 5, 1992, two State police troopers, Trooper John Brooks and Lieutenant Bruce Gordon, while sitting in a marked police cruiser on the side of the road, noticed an automobile in disrepair driving on Route 24 in West Bridgewater. The troopers were experienced drug officers assigned to be on the lookout for traffic violations as well as illegal drug activity during their highway patrol duty. The automobile noticed by the troopers was driven by the defendant Hector R. Santana. The defendant Jose C. Suozo was the only passenger. The troopers entered the highway and pulled in behind the automobile. They observed that the automobile had a broken taillight lens and decided to pull the automobile over to the side of the road. The troopers activated the blue lights on their cruiser. The defendants continued to travel for approximately one and one-half miles without stopping. The troopers then pulled alongside the vehicle and signaled the driver to pull over, which he did.

After the automobile stopped, Brooks approached the driver's side, where Santana was sitting, and Gordon approached the passenger's side, where Suozo was sitting. The vehicle's ignition was hanging from its damaged steering column. When Brooks asked about the ignition, Santana responded that he owned the automobile. Because Brooks thought that the vehicle could be a stolen automobile and did not want to risk a chase, Brooks told Santana to get out of the vehicle. Brooks and Santana went to the back of the automobile. Brooks thereafter verified Santana's license and registration.

At the same time, Gordon motioned to Suozo, who did not speak English, to roll down his window. Suozo opened the door and left the vehicle. Suozo handed Gordon a bag containing a half-gallon container of milk, which had been on the floor between Suozo's legs. Gordon, "confounded" by this action, moved Suozo away from the door and leaned into the automobile to place the bag on the floor. While placing the milk in the automobile's passenger side, Gordon noticed a clear plastic bag under the passenger's seat containing a white, rock-like substance which he believed to be cocaine. The defendants were arrested. A further search of the vehicle yielded an electronic scale in a bag in the back seat. Brooks checked the registration and found that it was valid and that the automobile belonged to Santana.

Both defendants were charged with trafficking in cocaine. The defendants filed identical motions to suppress the evidence found in the automobile. The same judge heard both motions and denied them. He issued identical findings on both motions. The defendants were tried separately. Both defendants were convicted. The defendants appealed. We transferred the cases here on our own motions and have now consolidated the appeals. We affirm the judgments.

1. *Pretext.* The defendants argue that the judge erred in admitting in evidence items seized from the automobile because the troopers used the broken taillight as a pretext to stop and search the automobile. The motion judge determined that "the stop of the vehicle for defective equipment was a matter of routine standard police procedure." The stop thus was lawful. "Where the police have observed a traffic violation, they are warranted in stopping a vehicle." *Commonwealth* v. *Bacon,* 381 Mass. 642, 644 (1980). The operation of an automobile with a broken taillight lens is such a violation. G. L. c. 90, § 7 (1992 ed.). 540 Code Mass. Regs. § 4.04 (8) (d) (1994).[1]

---

[1] The defendants argue that the police should not have pulled onto the highway and followed them. The motion judge found that the troopers did not notice the broken taillight until they pulled in behind the automobile. By pulling in behind the defendants, the troopers demonstrate that they

The fact that the troopers may have believed that the defendants were engaging in illegal drug activity does not limit their power to make an authorized stop.[2] See *Commonwealth v. Petrillo*, 399 Mass. 487, 490 (1987) (arrest for motor vehicle trespass which allowed search of automobile was not attackable based on fact that police officer was aware that arrestee was suspected of dealing drugs); *Commonwealth v. Matchett*, 386 Mass. 492, 510 (1982), quoting *Commonwealth v. Tisserand*, 5 Mass. App. Ct. 383, 386-387 (1977) ("taking an inventory of the contents of a car about to be towed or impounded is a reasonable procedure; and the fact that the searching officer may have harbored a suspicion that evidence of criminal activity might be uncovered as a result of the search should not vitiate his obligation to conduct the inventory"); *Commonwealth v. Ceria*, 13 Mass. App. Ct. 230, 235 (1982) ("The legitimacy of an arrest for one offense ordinarily will not depend on whether the officer subjectively believed that the arrest might lead to incriminating information regarding another offense"). "[P]olice conduct is to be judged 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.' " *Id.*, quoting *Scott v. United States*, 436 U.S. 128, 138 (1978). See *Petrillo, supra* at 491, quoting *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977). It was reasonable for the police to pull over an automobile that violated a motor vehicle law.

The defendants argue that, even though the police had the authority to stop the automobile, the stop was invalid because a reasonable police officer would not have made the stop in the absence of the motive of searching for drugs. In

were suspicious that there may have been unlawful activity in connection with the automobile, be it traffic violations or drug activity. "We will not scrutinize police activity based on hunch or suspicion . . . until such time as that activity clashes with individual rights." *Commonwealth v. Nutile*, 31 Mass. App. Ct. 614, 618 (1991) (there "can be no question that the detectives had the right to follow . . . the defendant as [he] drove"), quoting *Commonwealth v. Wooden*, 13 Mass. App. Ct. 417, 419 (1982).

[2]The record does not support the defendants' claim that the troopers had such a belief, and the motion judge did not so find.

so arguing, the defendants ask us to adopt the "reasonable police officer" test to determine whether stops are invalid because they are a pretext. Under this test, courts ask "not whether the officer *could* validly have made the stop, but whether [in] the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose" (emphasis in original). *United States* v. *Rivera,* 867 F.2d 1261, 1263 (10th Cir. 1989), quoting *United States* v. *Guzman,* 864 F.2d 1512, 1515 (10th Cir. 1988). While some courts follow this approach, others use the "authorization" test. *United States* v. *Cummins,* 920 F.2d 498, 501 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991). *United States* v. *Guzman, supra.* Under this test, it is irrelevant whether a reasonable police officer would have made the stop but for the unlawful motive; the stop is valid "so long as the police are doing no more than they are legally permitted and objectively authorized to do." *United States* v. *Trigg,* 878 F.2d 1037, 1041 (7th Cir. 1989), cert. denied sub nom. *Cummins* .v. *United States,* 502 U.S. 962 (1991). Massachusetts cases follow the "authorization" approach. See *Petrillo, supra* at 490; *Ceria, supra* at 235; *Tisserand, supra* at 386-387. Under this approach, the stop was proper.

The stop also was valid under the "usual police practices" approach. The motion judge found that "the stop of the vehicle for defective equipment was a matter of routine standard police procedure." See *Matchett, supra* at 510-511 (in the absence of clear error we defer to finding by motion judge that "search was conducted as a matter of routine, standard police procedure" and was "not a mere pretext concealing an investigatory police motive"). Because it was standard police procedure, a reasonable police officer would have stopped the defendants' automobile even in the absence of an ulterior purpose.

Further, the record does not support the contention that the troopers stopped the automobile in order to search it or to interrogate the defendants regarding illegal drug activities. See *Guzman, supra* at 1515 ("A pretextual stop occurs when the police use a legal justification to make the stop in order

to search a person or place, or interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop"). See also *Rivera, supra* at 1263. The troopers were assigned to look for traffic violations and for illegal drug activities. In pulling over the defendants, the troopers were carrying out the former part of their assignment. By driving an automobile with a broken taillight, the defendants took the risk of being stopped.[3]

2. *Discovery of cocaine.* The defendants[4] argue that their motions to suppress should have been granted because the bag of cocaine was not in plain view and Lieutenant Gordon did not have probable cause to search[5] when he leaned into the automobile. The motion judge determined that the evidence was discovered in plain view as the officer placed the bag containing the milk back into the vehicle. The motions to suppress were properly denied because the evidence was properly obtained under the plain view doctrine.

---

[3]We note that the defendants' contention might yield the illogical result of allowing stops of nonsuspect drivers who violate motor vehicle laws, but forbidding stops of suspected criminals who violate motor vehicle laws. See *United States* v. *Villomante-Marquez*, 462 U.S. 579, 584 n.3 (1983) (rejecting argument that police and customs officers could not rely on statute authorizing boarding of vessels to inspect documentation where they were following tip that the vessel contained marihuana).

[4]The Commonwealth concedes that, under the automatic standing rule, Suozo had a reasonable expectation of privacy in the area under his seat. See *Commonwealth* v. *Amendola*, 406 Mass. 592, 601 (1990). Santana, as owner of the vehicle, also had a reasonable expectation of privacy.

[5]Ordinarily, the leaning into an automobile is a search for constitutional purposes. "[W]hatever a police officer's intentions may be, when he intrudes into an area in which a person had a reasonable expectation of privacy, it is a search for constitutional purposes." *Commonwealth* v. *Ford*, 394 Mass. 421, 423 (1985). There is an expectation of privacy in "those areas which would be otherwise free from observation except by physical intrusion of some sort . . . includ[ing] . . . the area under [automobile] seats" (citations omitted). *Commonwealth* v. *Podgurski*, 386 Mass. 385, 389 (1982), cert. denied, 459 U.S. 1222 (1983). The judge determined, however, that Lieutenant Gordon's leaning into the automobile to return the bag containing the milk was not a search. There was no error.

"Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993). See, e.g., *Horton* v. *California*, 496 U.S. 128, 136-137 (1990); *Commonwealth* v. *Doulette*, 414 Mass. 653, 657 (1993); *Commonwealth* v. *Figueroa*, 412 Mass. 745, 750 n.9 (1992). Massachusetts cases also have required that the police officers come across the item inadvertently. E.g., *Commonwealth* v. *Sergienko*, 399 Mass. 291, 293 (1987); *Commonwealth* v. *Cefalo*, 381 Mass. 319, 331 (1980). Assuming, without deciding, that inadvertence is still required in the Commonwealth,[6] that requirement was met. Lieutenant Gordon was not looking for evidence, but was merely returning the bag containing the milk to the place from where Suozo took it, when he inadvertently came across the bag of cocaine.[7]

Once Gordon saw the bag of cocaine, its incriminating character was "immediately apparent." *Commonwealth* v. *Figueroa, supra* at 750-751 n.9. The judge determined that Gordon was reasonable in leaning into the automobile where he saw and accessed the evidence. "The plain view doctrine requires prior police justification for an intrusion in the course of which an officer inadvertently comes across incrimi-

---

[6]This requirement was adopted from the Supreme Court case of *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971). See *Commonwealth* v. *Sergienko*, 399 Mass. 291, 293 (1987); *Commonwealth* v. *Cefalo*, 381 Mass. 319, 331 (1980). In 1990, the Supreme Court rejected this requirement. *Horton* v. *California*, 496 U.S. 128, 130 (1990). We have noted the change but have not considered whether to retain the inadvertence requirement. *Commonwealth* v. *A Juvenile (No. 2)*, 411 Mass. 157, 164 n.8 (1991). See *Commonwealth* v. *La Plante*, 416 Mass. 433, 440 & n.9 (1993). The parties have treated inadvertence as a requirement and we decide this issue on that basis.

[7]Contrary to the assertions of the defendants, this was not part of a calculated ploy by the trooper to look under the seat. The motion judge found that Gordon was "confounded" by defendant Suozo's handing him the bag and leaned into the vehicle for the purpose of putting it back on the floor.

nating evidence. The 'prior justification' language is merely another way of articulating the necessity for 'some . . . legitimate reason for being present unconnected with a search directed against [an] accused.'" *Commonwealth* v. *Walker,* 370 Mass. 548, 557 (1976), quoting *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466 (1971). The constitutionality of the seizure hinges on the objective reasonableness of the officer's actions. See *Scott* v. *United States,* 436 U.S. 128, 137 (1978); *Commonwealth* v. *Ford,* 394 Mass. 421, 423-424 (1985).

Because Gordon's actions were reasonable, the seizure was lawful. For no apparent reason, he was handed a bag containing milk. Confused by Suozo's actions, and desiring to remain alert to danger by keeping his hands free, the trooper returned the milk to the place from which it was taken. While Gordon could have placed the bag elsewhere, returning it to the place from which it was taken was a reasonable reaction to the situation. Because Gordon's leaning into the automobile was reasonable in order to return the milk, and the bag of cocaine was in plain view when he did so, the denial of the motion to suppress was proper. See *Ford, supra* at 424 n.1 (entry into vehicle "to secure property in plain view with the resulting discovery of other property in plain view within the passenger compartment" would be reasonable; "the other property could be seized reasonably and its admission in evidence would be proper").

3. *The order to leave the automobile.* The defendants argue that their motions to suppress should have been allowed because the seizure of the evidence resulted from unlawful conduct by Trooper Brooks in ordering Santana out of the automobile. Trooper Brooks was within his powers in ordering Santana to exit the automobile.

When police are justified in stopping an automobile, they may, for their safety and the safety of the public, order the occupants to exit the automobile. E.g., *Pennsylvania* v. *Mimms,* 434 U.S. 106, 111 (1977); *Commonwealth* v. *Ferrara,* 376 Mass. 502, 505 (1978). To determine whether the order was justified, we ask "whether a reasonably prudent

man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." *Commonwealth* v. *Almeida*, 373 Mass. 266, 271 (1977), quoting *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). See *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62 (1982).

In the instant case, the defendants continued driving for approximately one and one-half miles after the troopers activated the flashing blue lights on their cruiser and did not stop until the troopers pulled alongside and physically signaled them to pull over; the ignition on the defendants' vehicle was "popped," causing the troopers to believe that the vehicle could be a stolen automobile; the automobile's engine was still running; and Trooper Brooks had not yet verified Santana's license and registration at the time of the order to leave the vehicle. In these circumstances, a reasonably prudent person in the troopers' position would have been warranted in believing that the defendants would have posed a threat to the troopers or the public, for example, by fleeing and becoming a danger on the highway. Trooper Brooks was therefore justified in ordering Santana out of the vehicle. See *Commonwealth* v. *McCleery*, 345 Mass. 151, 153 (1962) (police officer could order driver out of automobile so that license and registration could be verified); *Commonwealth* v. *Valentine*, 18 Mass. App. Ct. 965, 966 (1984) ("The 'popped-out' trunk lock [indicative of a stolen car] and the absence of rear lights provided the officer with sufficient justification to stop the vehicle, request a license and registration from [the driver], and order him out of the automobile"); *Commonwealth* v. *Farmer*, 12 Mass. App. Ct. 961, 962 (1981), cited in *Loughlin, supra* at 62 ("In the instant case there was reason to suspect the defendants were engaged in a burglary and it was, therefore, reasonable to question them outside their car, where they would not have access to weapons or means of escape").[8]

---

[8]In their briefs, the defendants erroneously rely on cases where the police had completed their inquiry and check of the driver's license and regis-

4. *Required finding of not guilty.* At the close of the Commonwealth's case, Santana moved for a required finding of not guilty on the ground that the Commonwealth failed to present sufficient evidence linking him to the cocaine. See Mass R. Crim. P. 25 (a), 378 Mass. 896 (1979). The judge denied the motion. Santana argues that this was an error of law.[9]

"[T]he question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). "The Government . . . need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Merola, supra* at 533, quoting *United States* v. *Systems Architects, Inc.*, 757 F.2d 372, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985). We conclude that the evidence is sufficient and that there was no error in the denial of Santana's motion.

---

tration at the time of the exit order and therefore had no reason for further detention or protective measures. E.g., *Commonwealth* v. *King*, 389 Mass. 233, 237-238, 244 (1983); *Commonwealth* v. *Loughlin*, 385 Mass. 60, 61-62 (1982); *Commonwealth* v. *Dellinger*, 383 Mass. 780, 783 (1981); *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978). In the present case, the troopers had not verified Santana's license or registration at the time they ordered him out of the automobile. See *Loughlin, supra* at 62-63 n.3 (had the exit order preceded the license and registration inquiry, the lower court would have to examine the reasonableness of the precautions); *Commonwealth* v. *McCleery*, 345 Mass. 151, 153 (1962) (properly could order defendant out of automobile so that license and registration papers could be verified, but "once that purpose had been accomplished, there appears no reason . . . why the defendant should not have been permitted to resume his seat and continue on his way").

[9]Suozo did not make a motion for a required finding of not guilty and he correctly does not argue that the evidence to convict was insufficient under the "substantial risk of a miscarriage of justice" standard. See *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987); *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

To withstand the motion, the Commonwealth had to present evidence proving that Santana possessed the cocaine. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991). Possession consists of exclusive or joint control and power, "or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Id.*, quoting *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980). The Commonwealth may prove possession by circumstantial evidence. *Garcia, supra.* "Discovery of contraband in the same automobile with the defendant, without more, is not sufficient evidence to warrant a finding of possession. . . . Presence in the same vehicle supplemented by other incriminating evidence, however, may suffice to show knowledge or intent to control." (Citations omitted.) *Id.* at 686-687.

The evidence was sufficient: Santana owned the automobile; the automobile's ignition was "popped," see *Alicea* v. *Commonwealth*, 410 Mass. 384, 388 (1991) ("The fact that the defendant was operating a vehicle with a 'popped' ignition and containing heroin worth thousands of dollars tends to show his knowledge of the presence of the drugs"); the cocaine was in a clear bag; there was an electronic scale in a bag in the back seat of the car; Santana failed to stop when the troopers put on their flashing blue lights; and there was evidence that, while Trooper Brooks was verifying his license and registration, Santana repeatedly looked over his shoulder at the automobile, see *id.* at 387-388 (demeanor can show that defendant was alarmed and knew that there was something incriminating to be found). Together, this evidence was sufficient for a jury to conclude that Santana knew that the cocaine was in the automobile and had the ability and intention to exercise dominion and control over it. Thus, there was no error in the judge's denial of Santana's motion for a required finding of not guilty.

*Judgments affirmed.*