Brassard, J.
Defendant Charles Williams (“Williams”) has been indicted for possession of a firearm and ammunition in violation of G.L.c. 269, §10(a) (1990 ed. & Supp. 1999). The defendant now moves to suppress evidence of a firearm and ammunition, arguing that the evidence resulted from an illegal search and seizure in violation of Article 14 of the Massachusetts Declaration of Rights. An evidentiary hearing was held on July 19, 1999. For the following reasons, the defendant’s motion is denied.
FINDINGS OF FACT
Based on all of the credible evidence, the Court makes the following finding of fact. On the evening of April 20, 1998, Officers Michael Devane (“Devane”), Tom Kelly (“Kelly”), and David Yee (“Yee") of the Boston Police Department Youth Violence Task Force were patrolling the Franklin Hill Housing Complex in an unmarked police cruiser. The officers were aware that three people had been stabbed in the Franklin Hill area earlier that day and that the stabbing victims were being treated at Boston Cily Hospital. The officers were also aware that two of the three victims were members of a local youth group or “gang” known as the Franklin Hill Giants. The officers knew nothing else about the stabbing incident. The officers knew that the Franklin Hill Giants were engaged in a general feud with another local youth group. Concerned that other members of the Franklin Hill Giants might retaliate against the persons responsible for the stabbing of two of their fellow members, the officers went to the Franklin Hill area to investigate the earlier stabbings and to deter any further violence.
At approximately 8:00 p.m. that evening, the officers noticed a cab in the circular driveway in front of the Franklin Hill Housing Complex, located off of Franklin Hill Avenue. The circular driveway enclosed *308 a small park in which children frequently played. The officers saw a person run up to and enter the cab but were unable to determine any distinguishing characteristics of this individual. The officers observed the cab proceed at an unreasonably high rate of speed and without regard for the children who were playing in the area as it headed out of the driveway onto Franklin Hill Avenue. The officers decided to stop the cab for traffic violations.
Kelly drove the unmarked police cruiser behind the cab and signaled for the cab to pull over. The officers noted that there were actually two passengers in the cab. As the officers approached the cab each of them observed the passenger behind the driver look back at them and then lean forward out of their view for a few seconds. Kelly and Yee proceeded to the left side of the vehicle with Kelly walking up to the cab driver and Yee stopping to talk to the left rear passenger. Devane went to the right side of the vehicle and stopped to talk to the right rear passenger.
As Kelly spoke to the cab driver, Devane looked into the cab and recognized the right rear passenger as Michael Cox (“Cox”). Cox also recognized Devane and referred to him as “Officer Mike” when the two exchanged greetings and engaged in conversation. Dev-ane had become acquainted with Cox in his capacity as a police officer and was aware that Cox was a member of the Franklin Hill Giants. Yee and Kelly also recognized Cox. None of the officers, however, recognized the defendant, the left rear passenger. Devane asked Cox where they were going. Cox replied that they were headed to Boston City Hospital. The defendant added that they were going to see Phil Wood, one of the stabbing victims. Yee asked the defendant his name. The defendant identified himself as Charles Williams. Devane then asked if there was going to be any retaliation for the earlier stabbings, at which point both passengers dropped their eyes, lowered their heads, and replied “no.” The passengers were then asked if they were in possession of any weapons, and again they replied “no."
Devane concluded that the sudden change in the demeanors of Cox and Williams indicated that their answers were untruthful. Devane indicated to Yee that they check the two young men. Devane and Yee asked the passengers to step out of the car. Both Williams and Cox complied and the officers performed a pat-frisk. Cox was holding a rolled-up gray sweatshirt which Devane also checked for weapons. Neither Dev-ane nor Yee found a weapon on Cox or Williams. Yee then asked Williams to step to the back of the cab, and Devane asked the same of Cox. Both Williams and Cox again complied. Yee then looked into the rear of the cab and noticed the barrel of a gun protruding out from underneath the cab’s driver seat. Cox and Williams were then handcuffed and placed under arrest. Yee recovered the gun and asked the cab driver if he knew anything about the presence of the gun in his cab. The cab driver replied that he knew nothing about the gun. The police took the cab driver’s name and address and informed him that he was free to go.
RULINGS OF LAW
After lawfully stopping the taxicab for traffic violations, all three officers observed a furtive gesture by the defendant (i.e. looking back at the officers, then leaning forward as if to place or retrieve something under the seat). At this point, under all of the circumstances, the officers had an “objective basis for suspicion that the passenger [was] involved in criminal activity” and properly engaged the defendant and the other passenger in a limited inquiry. Commonwealth v. Alvarez, 44 Mass.App.Ct. 531, 535 (1998), quoting Commonwealth v. Torres, 424 Mass. 153 at 158-61 (1997); see Commonwealth v. Heughan, 40 Mass.App.Ct. 102, 104-05 (1996) (furtive leaning gesture and radio broadcast of recent gunfire in area are factors in establishing reasonable suspicion).
Further, when the passengers, one of whom was an associate of two of the stabbing victims, responded unconvincingly to the officers’ questions about retaliation, the officers had a “reasonable belief that the officer’s safety, or the safety of others [was] in danger . . . ,” and properly requested that the passengers exit the motor vehicle and submit to a pat-frisk for weapons. Commonwealth v. Gonsalves, 429 Mass. 658, 662-63 (1999). In Gonsalves, the Court held that ”[w]hile a mere hunch is not enough, ... it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns ...” Id. at 664. The Court also held that “the officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.” Id. at 665, quoting State v. Smith, 134 N.J. 599, 618 (1994); see Commonwealth v. Santana, 420 Mass. 205, 213 (1995) (upholding an exit order where the officer did not fear his own safety, but rather believed the defendants would have posed a danger to the public by “fleeing and becoming a danger on the highway”).
Officer Yee properly conducted a Terry-type search of the automobile when he looked into rear of the motor vehicle and seized the firearm from an area from which the defendant might gain possession of a weapon. See Commonwealth v. Almeida, 373 Mass. 266, 272-73 (1977).
ORDER
For the foregoing reasons, the defendant’s motion to suppress is DENIED.