After a jury trial, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI); he then admitted to a second offense charge at a subsequent hearing before the same judge.[2] He now appeals, arguing that the judge erred in denying his motion to suppress, because the Commonwealth failed to justify the initial stop of his car. He also appeals the denial of his motion to revise and revoke his sentence, claiming he was improperly sentenced under G. L. c. 90, § 24, rather than § 24D. We affirm.
1. Motion to suppress. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). During the motion hearing, Sergeant Robert Schnitzer of the Eastham police department testified that, on May 31, 2015, while traveling north along Route 6 in Eastham in his marked patrol car, he saw a white Volkswagen Jetta traveling in the opposite direction "at a high rate of speed."[3] Schnitzer estimated, without using radar, that the vehicle was traveling approximately sixty-five miles per hour, obviously considerably greater than the forty mile per hour posted speed limit on that particular section of Route 6.[4] Schnitzer opined that the defendant's Jetta was traveling in the left lane at such a speed that it appeared he was having a difficult time staying in the marked travel lane. Schnitzer also testified that the defendant was traveling "comparably faster than the other vehicles that [the defendant] was traveling in the same direction with."[5] Based on his observations, Schnitzer immediately activated his emergency lights, reversed direction, and signaled to the defendant to stop his car. Schnitzer identified the defendant as the driver of the Jetta and, in response to Schnitzer's query, the defendant stated that he was traveling "[fifty-two] or [fifty-four]" miles per hour; Schnitzer eventually gave him a citation for speeding.[6]
At the conclusion of the hearing, defense counsel argued only that the stop was improper because the sergeant's estimation of the defendant's speed did not provide probable cause for the stop and therefore any later observations should be suppressed. The judge found that Schnitzer had a valid basis to stop the defendant for speeding, concluding that "a police officer-I don't think you have to be a police officer. I think the average motoring public can observe speed. And if one vehicle seems to be moving faster than all the others and beyond the speed limit-beyond the speed that the cruiser's going-even if he's going [forty] in a [forty] and the other vehicle's going faster, you can make a judgment that someone's speeding even without an exact measurement." The judge concluded "that the defendant was speeding which is a valid basis to stop [a] vehicle."
We are persuaded that the judge properly denied the defendant's motion to suppress because Schnitzer's stop of the defendant's vehicle was lawful. "Where police have observed a traffic violation, they are warranted in stopping a vehicle." Commonwealth v. Feyenord, 445 Mass. 72, 75 (2005), cert. denied, 546 U.S. 1187 (2006), quoting from Commonwealth v. Santana, 420 Mass. 205, 207 (1995). The Supreme Judicial Court recently has reiterated this principle in Commonwealth v. Buckley, 478 Mass. 861, 865-866 (2018), stating:
"In Santana, 420 Mass. at 209, we articulated the current State constitutional standard for evaluating the validity of a traffic stop. Under that rule, called the authorization approach, a traffic stop is reasonable for art. 14 purposes 'so long as the police are doing no more than they are legally permitted and objectively authorized to do,' regardless of the underlying intent or motivations of the officers involved. Santana, supra, quoting [from] United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989), cert. denied sub nom. Cummins v. United States, 502 U.S. 962 (1991). Stated differently, under the authorization test, a stop is reasonable under art. 14 as long as there is a legal justification for it. We have long held that an observed traffic violation is one such justification. See, e.g., Commonwealth v. Bacon, 381 Mass. 642, 644 (1980) ('Where the police have observed a traffic violation, they are warranted in stopping a vehicle'); Commonwealth v. Amado, 474 Mass. 147, 151 (2016) (valid stop where 'unlit registration plate'); Commonwealth v. Feyenord, 445 Mass. [at] 75... (valid stop where inoperable headlight in daylight); Santana, supra at 207 (valid stop where defective taillight). Cf. Commonwealth v. Lora, 451 Mass. 425, 436 (2008), quoting [from] Whren v. United States, 517 U.S. 806, 810 (1996) ('the decision to stop an automobile is reasonable for Fourth Amendment purposes "where the police have probable cause to believe that a traffic violation has occurred" ')."
In addition, while the parties argue whether the appropriate standard for making a traffic stop is probable cause or reasonable suspicion, we need not resolve that issue here because the opinion of the experienced officer that the defendant's car was traveling twenty-five miles per hour over the posted speed limit clearly established probable cause for the stop-particularly when the sergeant compared the defendant's speed to that of other vehicles on the road. See Bacon, supra.
2. Revise and revoke sentence. The defendant also argues that his sentence is controlled by G. L. c. 90, § 24D, as amended through St. 2002, c. 302, § 5, because the defendant's prior OUI conviction was more than ten years old. This, in his view, qualified him for sentencing under § 24D. We disagree.
After he was convicted of OUI, the defendant waived his right to a jury for the second portion of the bifurcated trial-relating to the second offense charge; he then admitted to committing a second offense.[7] Accepting the Commonwealth's recommendation, the judge sentenced the defendant to incarceration for six months in the house of correction, and suspended the sentence for two years of probation (until June 22, 2018). An express condition of probation was that the defendant complete a fourteen-day residential alcohol treatment program, along with various monetary assessments, and a license revocation for two years. See G. L. c. 90, § 24(1)(a )(4), (1)(b ), and (1)(c )(2).
On July 6, 2016, the defendant filed a motion to revise and revoke his sentence, arguing that he had a "minor record, consisting of just one conviction" (in 2004) that was more than eleven years old and, thus, he was eligible for sentencing in line with a "Cahill Disposition" under G. L. c. 90, § 24D. See Commonwealth v. Cahill, 442 Mass. 127, 130 (2004).[8] On February 14, 2017, in written findings, the judge denied the motion without a hearing, stating that even though a second offender may be eligible for a "Cahill" disposition under § 24D, "sentencing remains discretionary with the trial judge with a possible sentence of up to [two] and one-half years in the house of correction. The Court did find that the defendant was a suitable candidate for the second offender fourteen day in-patient treatment program and made written findings for same at sentencing."
The judge was well within his discretion here to sentence the defendant, who was convicted of an OUI second offense, under § 24(1)(a )(1) of chapter 90, rather than § 24D. Although we agree with the defendant that, in these circumstances, he was eligible for sentencing under § 24D, that discretionary sentence is not mandatory. See G. L. c. 90, § 24D, as amended by St. 2002, c. 302, § 5.[9] Further, the defendant's reliance on Cahill is misplaced. In Cahill, the Supreme Judicial Court, resolving a statutory ambiguity, held only that "second offenders who qualify for a disposition under § 24D should be treated no differently from first offenders. Limiting their loss of license to a maximum of ninety days comports with the plain wording of § 24D... as well as that section's historical purpose ...." Cahill, 442 Mass. at 134. That case in no way strips a judge of discretion to choose to sentence an otherwise qualifying defendant under § 24(1)(a )(1). For this reason, the judge did not abuse his discretion in denying the defendant's motion to revise and revoke.
Judgment affirmed.
Order denying motion to revise and revoke sentence affirmed.

A charge of negligent operation was dismissed on the defendant's motion. The judge also found the defendant responsible on two civil motor vehicle infractions-speeding and possessing an open container of alcohol; those charges were placed on file with the defendant's consent.

The defendant did not challenge Schnitzer's credibility.

Schnitzer testified that he was "headed to another assignment and did not have [his] radar activated, powered up or ready to measure speed."

Schnitzer was certified as a radar operator, where "estimating speed is part of the process of being certified as a radar operator."

On the front of the citation form, Schnitzer indicated that he "estimated" the defendant's traveling speed as fifty-four miles per hour, based on the defendant's "honesty."

The defendant admitted prior to sentencing that he had been convicted in 2004 in the Orleans District Court of an OUI offense.

In Cahill, supra at 131, 134, focusing primarily on the license penalty imposed by a § 24D disposition, the Supreme Judicial Court held that "[§] 24D expressly applies to first-time drunk driving offenders, as well as offenders with a single prior conviction or assignment to an alcohol education or treatment program for a similar offense that occurred ten or more years earlier, once in their lifetime," thus qualifying a second offender, if the judge chooses to sentence under § 24D, to a loss of license for a maximum of ninety days.

Section 24D provides that "[a]ny person convicted of or charged with operating a motor vehicle ... while under the influence of intoxicating liquor ... may if such person consents, be placed on probation for not more than two years and shall, as a condition of probation, be assigned to a driver alcohol education program as provided herein ..., and such person's license or right to operate shall be suspended for a period of no less than forty-five nor more than ninety days .... This section shall also apply to any person convicted of or charged with operating a motor vehicle while under the influence of intoxicating liquor who has been convicted of such offense or assigned to an alcohol or controlled substance education, treatment or rehabilitation program because of a single like offense by a court of the commonwealth or any other jurisdiction 10 years or more before the date of the commission of the offense for which he is to be sentenced, once in his lifetime." (Emphasis supplied.)