## Commonwealth *vs.* Marchania Williams.

No. 97-P-2003.

Suffolk. October 13, 1998. - January 19, 1999.

Present: Warner, C.J., Gillerman, & Greenberg, JJ.

*Search and Seizure,* Automobile, Threshold police inquiry. *Threshold Police Inquiry. Constitutional Law,* Search and seizure. *Controlled Substances.*

In the circumstances of a police officer's stop of a motor vehicle, which was justified by an observed traffic violation, no specific and articulable facts, or reasonable inferences drawn therefrom, were shown to have supported the officer's order to the driver to step out of her vehicle; consequently, items seized in a pat frisk of the driver after she got out of her car should have been suppressed. [182-185]

Complaint received and sworn to in the Roxbury Division of the District Court Department on May 2, 1996.

A pretrial motion to suppress evidence was heard by *Edward R. Redd,* J., and the case was heard by *Marie T. Buckley,* J.

*Pedro A. Jaile* for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

Warner, C.J. The defendant was the subject of an automobile stop during which cocaine was found on her person. The defendant filed a motion to suppress the contraband, which was denied by a District Court judge. The defendant subsequently stipulated to the facts contained in the police report and was found guilty. The defendant now appeals, arguing that her motion to suppress should have been allowed.

The motion judge found the following facts.[1] Shortly after midnight, the defendant was driving on Warren Street in Roxbury with two passengers. She drove from the right to the left

[1]The motion to suppress was heard on October 31, 1996. The judge did not issue written findings of fact until directed to do so by this court on March 10, 1998.

lane of the road without signaling and as a result was pulled over by a police officer.

The officer asked the defendant for her license and registration. The passengers appeared nervous at this time, and were asked to step out of the vehicle.

After the passengers left the vehicle, the officer observed the defendant acting in a suspicious, nervous manner and moving around. As a result, the officer asked the defendant to leave the vehicle. Although the defendant initially did not comply, she did step out upon a second request.

After the defendant stepped out of the vehicle, she grabbed her left jacket pocket. The officer, believing the defendant might have a weapon, took hold of the pocket, and felt objects inside. A knife, a bottle, and two bags of crack cocaine were removed from the jacket.

On appeal, the defendant argues that the officer's order to leave the vehicle exceeded the permissible scope of a routine automobile stop. The defendant further argues that, since the initial order to leave was impermissible, the evidence subsequently obtained through the officer's "pat frisk" of the defendant must be suppressed as fruit of the poisonous tree. *Wong Sun* v. *United States*, 371 U.S. 471, 484 (1963). *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978). *Commonwealth* v. *Alvarez*, 44 Mass. App. Ct. 531, 536 (1998).

In reviewing the denial of a motion to suppress, we accept the motion judge's findings of fact, absent clear error. *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997). However, the judge's conclusions of law, especially on issues of constitutional dimension, are open to independent review on appeal. *Commonwealth* v. *Selby*, 420 Mass. 656, 657 (1995).

The defendant changed lanes without using her turn signal, which is a traffic violation. G. L. c. 90, § 14B. "Where the police have observed a traffic violation, they are warranted in stopping a vehicle." *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995), quoting from *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980). Thus, the initial stop was justified.

"When police are justified in stopping an automobile, they may, for their safety and the safety of the public, order the occupants to exit the automobile. . . . To determine whether the order was justified, we ask 'whether a reasonably prudent man in the policeman's position would be warranted in the belief

that the safety of the police or that of other persons was in danger.' " (Citations omitted.) *Commonwealth* v. *Santana*, 420 Mass. at 212-213. *Commonwealth* v. *Vazquez*, 426 Mass. 99, 102-103 (1997). See *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62 & n.3 (1982) (where exit orders precede the officer's initial inquiry of the driver, there must be a finding as to the reasonableness of the officer's suspicions and the need for such precautions); *Commonwealth* v. *Farmer*, 12 Mass. App. Ct. 961, 962 (1981).

Given the clarity of these cases, there is no question that a police officer must have a reasonable belief that his or the public's safety was in danger before ordering an occupant out of a motor vehicle. Nonetheless, the Commonwealth urges us to disregard these cases and instead adopt the rule enunciated in *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977), that a police officer may lawfully order a driver[2] out of a car without demonstrating that the officer had a reasonable fear for his safety or the safety of others. We decline to do so.

*Mimms* rested on the logic, which we do not contest, that there is danger for a police officer inherent in any auto stop. *Mimms*, 434 U.S. at 110, 111. However, to permit an officer, in the absence of any specific and articulable facts, to order the driver of a vehicle to step out of the vehicle would be to invite random and unequal treatment of motorists. See *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 472 (1996) ("[t]he vice in interrogations and searches based on a hunch is their essentially random and arbitrary nature, a quality inconsistent, under constitutional norms . . . , with a free and ordered society").

It is true that cases from this court and the Supreme Judicial Court have cited approvingly to *Mimms*, without expressly stating that the police are not entitled to carte blanche authority to order drivers out of their vehicles. See, e.g., *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978); *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990); *Commonwealth* v. *Moses*, 408 Mass. 136, 142 (1990); *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528-529 (1995).

However, a closer examination of these cases reveals that while explicit language requiring a "reasonable suspicion" has not appeared, each case explored the factual basis for the of-

---

[2]This holding was extended to apply to passengers in *Maryland* v. *Wilson*, 519 U.S. 408, 415 (1997).

ficer's suspicion. See *Commonwealth* v. *Ferrara,* 376 Mass. at 505 (finding no basis for further interrogation and no need for further protective precautions, and reversing order denying motion to suppress); *Commonwealth* v. *Robbins,* 407 Mass. at 152 (police officer's actions proper where officer saw brown-handled object wedged in passenger seat and driver had just been arrested on outstanding warrant); *Commonwealth* v. *Moses,* 408 Mass. at 138, 141-143 (police officer's actions proper where officer feared defendants had access to a weapon, was outnumbered by defendants, and one defendant, upon making eye contact with the officer, ducked under dashboard). Therefore, although prior cases did not explicitly state, as does the *Santana* case, that an order to leave a vehicle must be based on reasonable justification, the analysis in those cases has been the same: in order to compel a driver to step out of his vehicle, the officer must demonstrate that "a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." *Commonwealth* v. *Santana,* 420 Mass. at 212-213, quoting from *Commonwealth* v. *Almeida,* 373 Mass. 266, 271 (1977).

Thus, we consider whether such reasonable suspicion existed in the present case. In assessing the reasonableness of the officer's suspicions, a court will look to whether the officer can demonstrate "specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience." *Commonwealth* v. *King,* 389 Mass. 233, 243 (1983). Although "[t]he evidence must be analyzed in terms 'understood by those versed in the field of law enforcement,' " *id.,* quoting from *United States* v. *Cortez,* 449 U.S. 411, 418 (1981), the standard is an objective one. *Commonwealth* v. *King, supra,* citing *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974). A mere hunch or a gut feeling on the part of the officer that there is something wrong is insufficient to satisfy the requirement of specific and articulable facts. *Commonwealth* v. *King, supra.*

In the present case, the Commonwealth can point to nothing more than the officer's testimony that the defendant was acting "suspicious[ly]," "moving around," and appeared extremely "nervous." These general descriptions fall short of the "specific and articulable facts" which are required to demonstrate reasonableness. *Ibid.* See *Commonwealth* v. *Santana,* 420 Mass. at 212-213; *Commonwealth* v. *Davis,* 41 Mass. App. Ct. 793, 794,

796 (1996) (defendant's erratic driving, beating of steering wheel with her hands, nervousness, and agitation insufficient to give rise to reasonable belief that officer's safety was in danger).

Since the initial order to leave the vehicle was impermissible, the evidence obtained pursuant to the frisk after the defendant left the car should have been suppressed. *Commonwealth* v. *Alvarez*, 44 Mass. App. Ct. 531, 536 (1998). The order denying the defendant's motion to suppress is reversed. As there is no other evidence supporting the charge of possession of a class B substance, that conviction must be reversed and judgment entered for the defendant.

> *Judgment reversed.*
>
> *Finding of guilt set aside.*
>
> *Judgment for the defendant.*