## COMMONWEALTH *vs.* ISMAEL TORRES, JR.

No. 99-P-338.

Essex. December 13, 1999. - June 7, 2000.

Present: ARMSTRONG, C.J., SMITH, & BROWN, JJ.

Further appellate review granted, 432 Mass. 1104 (2000).

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Automobile. *Constitutional Law,* Search and seizure. *Firearms.*

The record of a hearing on a motion to suppress evidence did not demonstrate that a police officer, who had stopped a motor vehicle solely for the driver's failure to come to a full stop at a stop sign, had a sufficient basis reasonably to fear for his or the public's safety or a reasonable apprehension that the defendant, a rear seat passenger, was engaged in criminal behavior; the officer's ordering the occupants at gunpoint out of the vehicle and to lie on the ground in order to frisk them was excessive and improper, and evidence obtained from the defendant as a result of the frisk properly was suppressed. [350-351]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on January 12, 1998.

A pretrial motion to suppress evidence was heard by *Ellen Flatley*, J.

An application for an interlocutory appeal was allowed by *John M. Greaney*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported to the Appeals Court by him.

*Catherine Langevin Semel*, Assistant District Attorney, for the Commonwealth.

*John R. Valerio* for the defendant.

BROWN, J. The Commonwealth appeals from an order allowing a motion to suppress a handgun seized from the defendant after he was ordered out of a motor vehicle in which he was a passenger. In reviewing a motion to suppress, we accept the judge's findings of fact, absent clear error, "[h]owever, we

independently review the application of constitutional principles to the facts." *Commonwealth* v. *James*, 427 Mass. 312, 314 (1998).

We summarize the judge's findings. On January 10, 1998, Officer Jeffrey Hart pulled over a vehicle that he observed fail to stop at a stop sign. Immediately upon stopping, all four vehicle doors opened and one of the rear seat passengers fled. Five other passengers remained in the vehicle. Officer Hart did not pursue the passenger who fled; he approached the car thinking that the passenger fled because the car was stolen. Officer Hart observed that the remaining three rear seat passengers were bent over, and he suspected they were trying to hide a handgun. The rear seat passengers did not immediately comply with Officer Hart's order to put their hands on their head, but waited until he drew his weapon.

Officer Hart called for backup; reinforcements arrived from Methuen and Lawrence within approximately two minutes. The assisting officers stood by with weapons drawn as Officer Hart holstered his gun and began taking the passengers out of the car individually, ordering them to the ground for frisking. Upon frisking the defendant,[1] a rear seat passenger, Officer Hart felt a hard object at his waistband, lifted his shirt, and removed a gun. The defendant was arrested, and the other occupants were released; the driver was issued a citation for failure to stop at a stop sign.

"The pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances. The degree of intrusiveness that is permitted is that which is 'proportional to the degree of suspicion that prompted the intrusion.' " *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990), quoting from *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). See *Commonwealth* v. *Ellsworth*, 41 Mass. App. Ct. 554, 557 (1996). The Commonwealth contends that the level of force used and the duration of the stop were reasonable given the possibility of flight, the large number of suspects involved, and the possibility that a weapon was in the vehicle. The Commonwealth further

---

[1]It is not clear from the record whether the defendant was frisked as he left the automobile or after he had been ordered to the ground.

argues that the stop was not tantamount to an arrest because the officer, in fear of his safety, was justified in ordering the defendant out of the car.

We conclude the motion judge warrantably could have determined, in the circumstances presented here, that, on balance, the degree of intrusiveness to the defendant far outweighed the degree of suspicion prompting the intrusion.[2] We think that Officer Hart used disproportionate force when he drew his weapon and ordered the occupants to lie on the ground when he merely wanted the backseat passengers to put their hands on their heads. See *Commonwealth* v. *Silva*, 366 Mass. 402, 408 (1974) (permissible search is "confined to what is minimally necessary to learn whether the suspect is armed"). The officer lacked sufficient basis reasonably to fear for his or the public's safety when he only stopped the car for a civil motor vehicle infraction without any objective indicia of risk or criminality in the circumstances. See *Commonwealth* v. *Gonzales*, 429 Mass. 658, 665 (1999). Nor did the officer have any additional information that would justify a belief that the defendant was suspected of any illegal activity.[3] Contrast *Commonwealth* v. *Vazquez*, 426 Mass. 99, 103 (1997); *Commonwealth* v. *Barbosa*, *ante* 344 (2000). His exit order was thus excessive and improper, as it was not grounded in a reasonable apprehension that either his safety was in jeopardy or that the defendant was engaged in the commission of a crime.[4] See *Commonwealth* v. *Williams*, 46 Mass. App. Ct. 181, 184 (1999). The use of force was not

[2]Deciding as we do, we do not have to address the motion judge's conclusion that the exit order exceeded permissible limits of a threshold inquiry and that the officer thus did not have a reasonable basis to order the defendant out of the vehicle and search his person. Nor do we need to address the Commonwealth's argument that the motion judge incorrectly concluded that because the stop was tantamount to an arrest, the seizure of a handgun was the fruit of an illegal search.

[3]Arguably, the flight of one rear seat passenger justified the officer's belief that possibly the car was stolen. However, there is no evidence that the officer attempted to further investigate prior to drawing his weapon.

[4]We emphasize the principle restated in *Commonwealth* v. *Gonzales*, 429 Mass. at 665-666 n.5, that: "No exit order may be given to the driver or any passenger in a routine traffic stop without the police officer's having an objective reasonable basis to justify the order." "[T]o permit an officer, in the absence of any specific and articulable facts, to order the driver out of a vehicle [and a passenger or passengers] to step out of the vehicle would be to invite random and unequal treatment of motorists." *Id.* at 664 (citation omitted). See *Commonwealth* v. *Williams*, 46 Mass. App. Ct. 181, 183 (1994).

precipitated by any actions by the defendant, despite the unfounded suspicion that a gun was involved. See *Commonwealth* v. *Bottari*, 395 Mass. 777, 782 (1985) ("[t]he fact that the officers suspected that one of the occupants may have had an illegal gun does not justify their use of force, without the presence of other fear-provoking circumstances which are absent here"). See also *Commonwealth* v. *Davis*, 41 Mass. App. Ct. 793, 796 (1996). Given the fact that reinforcement officers arrived within two minutes, the officer's ordering the defendant out of the car and to lie on the ground at gunpoint was more intrusive than warranted.[5] Contrast *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 402 (1998) ("least intrusive manner" was chosen to protect safety of the officers).

"Since the initial order to leave the vehicle was impermissibl[y] [excessive], the evidence obtained pursuant to the frisk after the defendant left the car should have been suppressed." *Commonwealth* v. *Williams*, 46 Mass. App. Ct. at 185. See *Wong Sun* v. *United States*, 371 U.S. 471, 484 (1963). The order allowing the defendant's motion to suppress is affirmed.

*So ordered.*

---

[5]We note once again that this sort of unseemly treatment is "most commonly [accorded to] persons belonging to a racial or ethnic minority." *Commonwealth* v. *Alvarez*, 44 Mass. App. Ct. 531, 536 (1998), and authorities cited therein.