Agnes, Peter W., J.
I.INTRODUCTION
The defendant Felix Rivas is charged by indictment with Trafficking in Cocaine, a Class B controlled substance, a school zone violation and filing a false motor vehicle application arising out of the stop of a motor vehicle which he was operating in the Berkeley Street area of Lawrence, Massachusetts on January 31, 2005. Based on the credible evidence presented at a hearing on the motion to suppress held on April 21, 2006,1 make the following findings of fact and rulings of law.
II.FINDINGS OF FACT
At approximately 3:20 p.m. on January 31, 2005, Lawrence Police Detective Danren Fraser, a member of the New England Fugitive and High Intensity Drug Unit, a collaboration between the Lawrence and Lowell police departments along with the United States Marshall’s service, was operating an unmarked Chevrolet Trailblazer in or on Berkeley Street in Lawrence, Mass. At the time, he was not actively looking for any suspects. However, his routine involves regularly stopping motor vehicles when violations are observed and in his experience drugs and/or guns are found in them 10-15% of the time. Detective Fraser observed a 1988 green Oldsmobile sedan motor vehicle ahead of him. He did not observe any traffic violations or improper operation, but he did observe a red colored sticker on the vehicle’s windshield. Based on his training and experience, he recognized the sticker as a “rejection sticker” of the type that issued following an inspection in which the vehicle fails to meet the requirements of the inspection program due to safety problems. So-called black “rejection stickers, on the other hand, in the experience of detective Fraser, indicate that the vehicle also failed to pass inspection but as a result of emission control problems and not safety problems.
Believing that the red sticker prohibited operation of the vehicle, Detective Fraser activated his blue lights and directed the operator of the other vehicle to pull over. The defendant safely pulled over and stopped his car. As Detective Fraser approached the other vehicle, he made an observation that the defendant moved forward and for a moment his body was out of view. Detective Fraser called for a tow truck. He approached the driver’s side, told the defendant to produce his license and registration, and then to keep his hands on the wheel. The defendant had a temporary, paper license which had expired.[1] The defendant was unable to produce a registration. The defendant was ordered to exit the vehicle. A pat frisk of his person led to the discovery of a cell phone and $85.00 in United States currency. As he reached inside the vehicle to locate the vehicle’s registration from the center console, but while still standing outside the vehicle, Detective Fraser observed a black pouch on the driver’s side floor which he was able to see contained a plastic see-through bag containing a white, chalk-like substance. Detective Fraser seized the pouch and found that it contained a digital scale, a plastic spoon and what later proved to be 35 grams of cocaine.
III.DISCUSSION
A. There Must Be an Objective Basis to Justify a Motor Vehicle Stop
“A police officer is warranted in making a threshold inquiry where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime. That action must be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer’s experience. Random stops to check the vehicle’s equipment or the status of the operator’s license are not permitted. Delaware v. Prouse, 440 U.S. 648 (1979).[2] A mere hunch that a crime or a violation has been committed is not enough. Simple good faith on the part of the officer is not enough. ’’The test is an objective one." Commonwealth v. Bacon, 381 Mass. 642, 644 (1980) (citations and quotations omitted). Accord, Commonwealth v. Mercado, 422 Mass. 367, 369 (1996). See, e.g., Commonwealth v. Feyenord, 445 Mass. 72 (2005) (operating during the daytime with one defective headlight); Commonwealth v. Sinforoso, 434 Mass. 320 (2001) *176 (speeding and a red light violation); Commonwealth v. Torres, 433 Mass. 669, 673 (2001) (failure to stop at a stop sign); Commonwealth v. Santos, 65 Mass.App.Ct. 122 (2005) (failure to stop at a stop sign); Commonwealth v. Stack, 49 Mass.App.Ct. 227, 233 (2000) (driving with headlights off); Commonwealth v. Robles, 48 Mass.App.Ct. 490, 493 (2000) (same); Commonwealth v. Williams, 46 Mass.App.Ct. 181, 182, rev. den., 429 Mass. 1109 (1999) (unsafe lane change); Commonwealth v. Garcia, 34 Mass.App.Ct. 645, 649, rev. den., 416 Mass. 1102 (1993) (defective license plate).[3],[4]
B. The Safety and Emission Inspection Program Administered by the Registrar of Motor Vehicles
The Legislature has directed the Registrar “to establish rules and regulations providing for a periodic staggered inspection of all motor vehicles . . .” G.L.c. 90, §7A. This section goes on to provide that the inspection program shall deal with both emissions requirements and safety issues. “[T]he rules and regulations for periodic staggered inspection established hereunder shall include, but not be limited to, an annual maintenance inspection to determine the proper and safe condition of the following: brakes, stop lamps, lights, directional signals, horn, vehicle identification number, steering and suspension systems, glazing, windshield wipers and cleaner, number plates, tires, fenders, bumpers, external sheet metal, reflectors, splash guards, chock blocks, safety belts and exhaust systems.” G.L.c. 90, §7A. If a motor vehicle meets the inspection requirements established by the Registrar under §7A, it receives a certificate of inspection which in turn is proof that the vehicle has passed inspection. G.L.c. 90, §7V(a). A motor vehicle which fails inspection, whether due to failing the emission standards promulgated by the Commissioner of Environmental Protection under G.L.c. Ill, §142J or the safety standards established by the Registrar, receives “a certificate of rejection indicating that the motor vehicle has failed the initial emissions inspection or safety inspection as required by said section 7A.” G.L.c. 90, §7V(b). In the case of a rejection, the Registrar is required to adopt by regulation “a procedure for permitting the reinspection of any motor vehicle that has been issued a certificate of rejection and has all necessary repairs performed on said vehicle; provided, however, that said reinspection be performed by the original inspection station without payment of any additional fee.” There is no provision in the legislative scheme that states that a rejection, whether for safety or emission problems, means that the vehicle may not be operated.
The Regulations adopted by the Registrar pursuant to G.L.c. 90, §7A are found in Chapter 4.00 et seq. of the Code of Massachusetts Regulations. See 540 C.M.R. §4:01 (2006). A fair reading of these regulations establishes that the system adopted by the Registiy of Motor Vehicles to implement the Legislature’s requirement of an inspection program for vehicles does not immediately forbid a motorist from operating a vehicle which has failed the inspection, whether due to an emission problem or a safety problem, but rather imposes on the motorist a duty to fix the problem and present the vehicle to the same inspection station for reinspection without additional cost. See 540 C.M.R. §4.07(3)(a), (b) and (c). If a motorist fails to correct the deficiency within sixty days of the issuance of the rejection sticker, whether due to a safety problem or an emission problem, the motor vehicle’s registration is suspended. 540 C.M.R. §4.07(4).
The Registrar of Motor Vehicles has adopted a regulation that provides that a motor vehicle which fails to meet “all applicable inspection requirements shall be issued a Certificate of Rejection.” 540 C.M.R. §4.07(3)(a). The regulations provide further that “[a] Certificate of Rejection authorizes the operation of a motor vehicle for a period of 60 calendar days after inspection, provided that all safety related equipment defect(s) have been corrected prior to continued operation. Safety related equipment defects are items of inspection exclusive of emissions inspection items.” 540 C.M.R. §4.07(3)(b).[5] Finally, the regulations provide that if a motorist does not comply with the regulations, the vehicle’s registration will be suspended pursuant to G.L.c. 90, §22. 540 C.M.R. §4.07(4). See also 540 C.M.R. §4.00.
The effect of these regulations is that a motorist whose vehicle fails inspection for safely related reasons and is issued a Certificate of Rejection may address the failures and continue to operate for up to 60 calendar days while the rejection sticker is affixed to the vehicle without the issuance of a new inspection sticker. If the motorist fails to address the safely problems, the vehicle’s registration will be suspended.
C. The Right to Operate Versus the Right to Stop a Vehicle
The Commonwealth argues that the operation of a motor vehicle that does not meet the safety standards established by the Registrar is a crime under G.L.c. 90, §20. That reasoning is faulty because the law permits a motorist to operate a vehicle with a red rejection sticker for 60 days provided the safety defects have been corrected. However, the state and federal constitutions do not require proof that a crime or traffic violation infraction has actually been committed before a police officer is permitted to stop a motor vehicle to conduct a threshold inquiry. The standard, rather, is reasonable grounds to believe that the law has been violated.
The applicable statutes establishing the vehicle inspection program and the regulations adopted by the Registrar expressly permit a motorist to operate a vehicle which has been issued a red rejection sticker provided that the safety deficiency has been corrected. See 540 C.M.R. §4.07(3)(a), (b) and (c). However, even *177 though Detective Fraser was incorrect in his belief that vehicles bearing a red rejection sticker may not be lawfully operated on the roadways, a motorist’s right to operate the vehicle under such conditions does not fully answer the question of whether Detective Fraser had an objectively reasonable basis for the motor vehicle stop. See Commonwealth v. Catanzaro, 441 Mass. 46, 55-56 (2004) (“There is no ready test for reasonableness except by balancing the need to search or seize against the invasion that the search or seizure entails”). A motorist operating with a red rejection sticker who fails to correct the safety deficiency will not have his registration suspended as a matter of law for sixty days. If the police are not permitted to stop such vehicles until the sixty-day period expires, the safely of the motorist and the public could be at risk due to the operation of a vehicle with faulty safety equipment. Thus, upon further consideration of the matter[6] it is the court’s view that the existence of a red rejection sticker supplies the police with an objectively reasonable basis for the belief that the defendant was operating the vehicle in violation of the law. See Commonwealth v. Santana, 402 Mass. 205 (1995) (an objectively reasonable basis for making a stop is justified regardless of the actual subjective motive of the officer); Commonwealth v. Baez, 47 Mass.App.Ct. 115, 118 (1999) (“We think the standard to be used in determining the legality of a stop based on a suspected violation of c. 90, §9D, is whether the officer reasonably suspected, based on his visual observations, that the tinting of the windows exceeded the permissible limits of §9D”) [7] See also Commonwealth v. Whitehead, 49 Mass.App.Ct. 905 (2000) (rescript) (Police can’t stop a motorist based on a belief that a traffic violation is imminent).[8]
ORDER
The stop of a vehicle bearing a red rejection sticker provides an objectively reasonable basis for the identification of potentially significant safety flaws that could endanger the operator or the public. Once Detective Fraser stopped the defendant’s vehicle, he had a right to demand his license and registration. The defendant’s paper license having expired, there was justification for an exit order and an arrest. An examination of the interior of the vehicle for the registration was reasonable and led to the discovery of drugs. For the above reasons, the defendant’s motion to suppress is DENIED.

Detective Fraser later learned that the defendant also used the name “Femando Suarez” and that he had outstanding warrants from the Lawrence District Court.

Of course, merely following and observing a vehicle does not constitute a seizure under state or federal law. See Commonwealth v. Williams, 422 Mass. 111, 116-17 (1996).

Massachusetts law is consistent with federal law in not recognizing a good faith exception to the exclusionary rule in this circumstance. Compare Commonwealth v. Bacon, supra, with United States v. Chanthasouxat, 342 F.3d 1271 (11th Cir. 2003) (Officer’s good faith, but erroneous belief that local or state law required driver to have an inside rear-view mirror, as opposed to any mirror, inside or outside, that provided a view of the rear rendered the stop of the motor vehicle unlawful), and United States v. King, 244 F.3d 736, 739, 740-41 (9th Cir. 2001) (Officer’s good faith but mistaken belief that operator driving with a disabled person placard hanging from a rear view mirror was in violation of a local ordinance that prohibited obstructions of the windshield rendered the stop of the vehicle unlawful). While Detective Fraser’s belief that a vehicle bearing a red rejection sticker could not be operated under any circumstances is not correct, see text infra, that erroneous belief does not invalidate the action he took so long as it was objectively reasonable. Also, even though Detective Fraser may have made up his mind that he was going to tow the vehicle before he approached it, under the objective standard applicable in such cases the outcome turns entirely on the sequence of events and what the officer actually did, not on his subjective intentions.

There also is a narrow class of cases in which the police are permitted to stop a motor vehicle in the performance of their community care-taking function even though there is no reason to believe a crime has been committed and without being involved in the enforcement of a regulatory program. See, e.g., Commonwealth v. Canavan, 40 Mass.App.Ct. 642 (1996), and cases cited.

The web site for the Registry of Motor Vehicles contains an advisory for motorists whose vehicles receive a red rejection sticker informing them that they must correct the safety problems before they operate the vehicle. See http: / /mass. gov/rmv/faq/inspection.htm#27.

On May 18, 2006, this court entered an order allowing the defendant’s motion to suppress on grounds that justification for the motor vehicle stop was absent because the law permits a vehicle with a red rejection sticker to be operated for up to sixty days before the need to obtain a new inspection sticker so long as the safety issues are corrected. While it is true that a motorist who is issued a red rejection sticker and does not take steps to correct the safety problems will have his or her registration suspended as a matter of law sixty days after the red rejection sticker is affixed to the vehicle, the potential for operation of an unsafe vehicle for up to sixty days if the police are not permitted to stop and inspect the vehicle is an unacceptable risk that neither the Legislature or the Registrar should be presumed to have intended. This court has the power to reconsider interlocutory rulings sua sponte within a reasonable time after entering the order. See Commonwealth v. Damiano, 444 Mass. 444 (2005); Commonwealth v. Cronk, 396 Mass. 194 (1985). Since no new material has been considered, there is no need for a further hearing. See Commonwealth v. Downs, 31 Mass.App.Ct. 467, 470 (1991). The defendant’s right to seek interlocutory review of this decision is fully preserved.

In the present case, unlike in the tinted window cases, the suspicion that a motor vehicle violation is taking place is not left simply to the subjective assessment of the police officer because the existence of the red rejection sticker is an objective manifestation that there is or was a safety violation.

The right to stop a motor vehicle to conduct a threshold inquiry based on the appearance of a red rejection sticker does not give the police a right to then conduct a search for drugs. In all such cases, the question becomes whether the investigative measures taken by the officer after the stop were “reasonably related in scope to the circumstances which justified the interference in the first place.” Terry v. Ohio, 392 U.S. 1, 19-20 (1968). The burden is on the Commonwealth not only to justify the reasonableness of the initial stop, but also to justify the reasonableness of each step taken by the police following the stop. Florida v. Royer, 460 U.S. 491, 500 (1983); Commonwealth v. Borges, 395 Mass. 788, 794 (1985). An initial request to the operator to produce a license and registration will always be appropriate. See Commonwealth v. Sinforoso, 434 Mass. 320, 323-24 (2001). “But [the] Officers’ *178 actions must be no more intrusive than necessary at each step to effectuate both the safe conclusion to the traffic stop and the further investigation of the suspicious conduct.” Commonwealth v. Santos, 65 Mass.App.Ct. 122, 126-27 (2005). See generally Commonwealth v. Feyenord, 445 Mass. 72 (2005) (“Feyenord’s extended detention, after his motor vehicle was stopped for a traffic violation, for the purpose of summoning a canine unit, was reasonable and proportional to the unfolding circumstances that suggested his involvement in criminal activity beyond the violation for which he was initially detained”).