COMMONWEALTH *vs.* ABRAM ACEVEDO.

No. 08-P-121.

Middlesex. October 20, 2008. - January 5, 2009.

Present: COHEN, GRAHAM, & SIKORA, JJ.

Further appellate review granted, 453 Mass. 1104 (2009).

*Threshold Police Inquiry. Constitutional Law,* Search and seizure, Investiga-
tory stop, Stop and frisk. *Search and Seizure,* Threshold police inquiry.

A Superior Court judge properly denied the criminal defendant's motion to
suppress evidence, brought on the ground that the defendant had been
stopped unlawfully, where, viewing the circumstances as a whole (i.e., the
radio dispatch that police detectives received concerning a robbery, the
proximity of the defendant and his companion to the scene of the crime,
the lapse of only three minutes between the report of the crime and the
observation of the defendant and his companion, the fact that the defendant's
companion was wearing a specific brand of sneaker mentioned in the
dispatch, and the fact that the defendant and his companion were the only
persons seen by the detectives who generally fit the description given via
the dispatch), at the moment the detectives frisked the defendant and his
companion and declared an intent to detain them until the victim could ar-
rive and have a chance to view them, the detectives had an objective
factual basis for concluding that the defendant and his companion had
engaged in criminal activity. [455-458]

INDICTMENT found and returned in the Superior Court Depart-
ment on February 10, 2004.

A pretrial motion to suppress evidence was heard by *Regina
L. Quinlan,* J., and the case was heard by *Christopher J. Muse,*
J.

*Pamela Lindmark* for the defendant.

*Meghan E. O'Neill,* Assistant District Attorney, for the Com-
monwealth.

GRAHAM, J. After a jury-waived trial in Superior Court, the
defendant was convicted of unarmed robbery in violation of
G. L. c. 265, § 19(*b*). Prior to trial, the defendant filed a motion
to suppress in which he argued that he was unlawfully stopped

and frisked on a street in Cambridge. The motion judge held a hearing on the defendant's motion, but no transcript of that hearing exists due to a malfunction in the computer used by the court reporter present during the motion hearing.[1] The motion judge denied the defendant's motion in a written memorandum of decision. The sole basis of the defendant's appeal is that the motion judge erred in denying his motion to suppress evidence. We affirm.

*Facts.* The motion judge's findings may be summarized as follows. On December 1, 2003, at approximately 3:50 P.M., Detective Stephen Lyons of the Cambridge police department responded to a call regarding an armed robbery on Brookline Street in Cambridge. The victim described his assailants as two black males, one "heavier than the other," wearing "a black Raiders jacket with a hat under a hat[,] and the other [wearing] white Converse sneakers." The assailant in the Raiders jacket was reported as having a gun. The assailants were also said to be "fleeing" down Hamilton Street in the direction of Sidney Street.

Lyons, in plain clothes and driving an unmarked police cruiser, responded to the area of Hamilton and Sidney Streets, which is approximately three blocks from the scene of the robbery. As he drove around the area, Lyons observed two black males walking on Henry Street near the intersection with Sidney Street. The clothing worn by the pair "was bulky and different from that described except that one of the men was wearing Converse sneakers."[2] Neither man appeared to be wearing a Raiders jacket, but Lyons took particular note of the sneakers.

Detective Anthony Grassi was also driving in the area in an unmarked cruiser and, after speaking to Lyons via the police radio, pulled over and stopped his cruiser. The suspects crossed the street, and the detectives got out of their cruisers and ap-

---

[1]We have been supplied with the trial transcript. However, without a transcript of the motion hearing or a reconstruction of that record pursuant to Mass. R.A.P. 8(c), as amended, 378 Mass. 932 (1979), our analysis must be based only on the motion judge's findings. This is the case even though the testimony concerning the circumstances of the stop and frisk may have developed somewhat differently at trial. In any event, the defendant does not contend that the motion judge's findings are erroneous or misleading in any respect.

[2]The defendant was identified as the one not wearing the Converse sneakers.

proached them. Lyons and Grassi identified themselves as police officers and told the suspects they were investigating an armed robbery in the area. The suspects denied involvement in any crime. Lyons asked if they would agree to a patfrisk, and the men consented. The frisk was uneventful, and no weapons were found on the pair. Lyons and Grassi detained the two men after being told that the victim was being brought to the scene. Four to five minutes later, the victim was brought to the scene by other officers, and he identified the suspects as the men who had committed the robbery. The suspects were both arrested and transported to the station for booking.

Noting that the question was close, the motion judge reasoned as follows. Although "[t]he description of the perpetrators of the armed robbery was less than stellar in its details . . . , that description in combination with other factors was sufficient to justify the stop in this case." The suspects were "within three blocks of the crime scene minutes after [the detectives] receiv[ed] the report of the armed robbery. They were the only persons seen who generally fit the description given via the radio dispatch."

*Discussion.* For purposes of reviewing a ruling on a suppression motion, we accept a judge's subsidiary findings of fact absent clear error. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997); *Commonwealth* v. *Williams*, 46 Mass. App. Ct. 181, 182 (1999); *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 639 n.3 (2001). "The weight and credibility to be given testimony is for the judge." *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002). In assessing credibility, the judge has wide discretion to accept all, some, or none of a witness's testimony offered at a suppression hearing. See *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 491 (2001).

While we accept the motion judge's subsidiary findings of fact absent clear error, we review independently her ultimate findings and conclusions of law. *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). "Our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Vesna San*, 63 Mass. App. Ct. 189, 190 (2005), quoting from *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). See *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

We begin our analysis by considering whether Lyons and Grassi had a legally sufficient basis for stopping the defendant. We are guided by the following constitutional principles. "[A] police officer may stop an individual and conduct a threshold inquiry if the officer reasonably suspects that such individual has committed, is committing, or is about to commit a crime. To qualify as 'reasonable,' the officer's suspicion 'must be based on specific, articulable facts and reasonable inferences drawn therefrom.' The standard is objective: 'would the facts available to the officer at the moment of the seizure or the search "warrant a [person] of reasonable caution in the belief" that the action taken was appropriate?' " *Ibid.* (citations omitted). See *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 51 (2000). A "hunch" or "good faith" on the part of the police cannot meet this constitutional standard. See *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990); *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001).

The motion judge was correct in her determination as to when a stop of the defendant in the constitutional sense, i.e., a seizure, occurred. When the police first approached the defendant they did so by way of a field encounter, which is not a constitutional stop. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 785-789 (1996). "[O]fficers may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries." *Commonwealth* v. *Murdough*, 428 Mass. 760, 763 (1999). The detectives in this case informed the defendant and his companion that they were investigating an armed robbery and asked them whether they would agree to a patfrisk. Both consented to the patfrisk. A stop for purposes of art. 14 of the Declaration of Rights of the Massachusetts Constitution occurred when the suspects were frisked and continued when Lyons declared his intent to detain them until the victim arrived and had a chance to view them. The issue, therefore, is whether, at that point of constitutional moment, the detectives had an objective factual basis for concluding that the suspects had engaged in criminal activity. In so doing, we do not examine each fact known to the detectives at the time of the stop in isolation; instead we view the "facts and inferences underlying

the officer's suspicion . . . as a whole when assessing the reasonableness of his acts." *Commonwealth* v. *Thibeau,* 384 Mass. 762, 764 (1981).

We agree with the motion judge that the case is a close one, and is factually similar but distinguishable from the facts in *Commonwealth* v. *Cheek,* 413 Mass. 492 (1992). In *Cheek,* police officers were on routine patrol in the Grove Hall neighborhood in the Roxbury section of Boston on November 12, 1990, when, at approximately 11:20 P.M., they received a report that a victim had been stabbed in the back, but was conscious. The suspect in the stabbing was described as a "black male with a black ³/₄ length goose [down jacket]." *Id.* at 493. The officers began to search the Grove Hall area for a suspect and "[s]ubsequently . . . observed a black male [Cheek] walking on a street approximately one-half mile from the scene of the reported stabbing[,] . . . wearing a dark-colored three-quarter length goose-down jacket." *Ibid.* When the police approached Cheek and asked him his name, his response was not clear to the officers and his hands were in his coat pocket. The police conducted a patfrisk of Cheek and recovered a .38 caliber handgun from his coat pocket. Cheek was arrested, and a subsequent booking search of him revealed seventeen plastic bags of marijuana.[3] *Id.* at 493-494.

Cheek filed a motion to suppress the evidence obtained as a result of the police searches. The motion judge relied on the following factors "to support the conclusion that the police acted reasonably in stopping [Cheek]": (1) the radio broadcast; (2) Cheek's jacket, which matched the description given in the broadcast; (3) that Cheek was " 'in proximity' to where the stabbing occurred"; and (4) "that the area where the defendant was stopped was known to the officers as a 'high crime area.' " *Id.* at 495. The Supreme Judicial Court reversed the decision of the motion judge, concluding that these factors could not have provided the police with reasonable suspicion that the defendant was the perpetrator of the reported stabbing. It wrote, "Significantly, the description of the suspect as a 'black male with a black

---

[3]In *Cheek, supra* at 493, the defendant was indicted not as the perpetrator of the stabbing, but for the unlawful carrying of a handgun, possession of ammunition, and possession of marijuana with intent to distribute.

³/₄ length goose' could have fit a large number of men who reside in the Grove Hall section of Roxbury, a predominantly black neighborhood of the city. The officers possessed no additional physical description of the suspect that would have distinguished the defendant from any other black male in the area . . . . Moreover the Commonwealth presented no evidence to establish that a '³/₄ length goose' jacket, the sole distinctive physical characteristic of the garment, was somehow unusual or, at least, uncommon as an outer garment worn on a cold fall night."

In the case at bar, the judge found that the specific facts on which the detectives based the stop of the defendant were the broadcast received by the detectives, the proximity of the suspects to the scene of the crime,[4] the minor lapse of time (three minutes) between the report of the crime and Lyons's observation of the suspects, and the fact that one of the two suspects was wearing white Converse sneakers. In addition, and of great significance, was the fact that here, unlike the situation in *Cheek*, the judge found that the suspects were the only persons seen by the detectives "who generally fit the description given via the radio dispatch." Viewing the circumstances as a whole, we agree with the motion judge that the stop was proper and the evidence secured therefrom admissible.

*Judgment affirmed.*

---

[4]Unlike the defendant in *Cheek*, the defendant here was a mere three blocks from the scene of the crime.