NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-527

COMMONWEALTH

vs.

MOHAMED MOHAMED.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Mohamed Mohamed, was indicted on various firearm and assault charges.[1]  The defendant filed a motion to suppress evidence and statements resulting from a stop and search of his vehicle by Somerville police officers.  After an evidentiary hearing, a judge of the Superior Court allowed the motion to suppress and denied the Commonwealth's motion for reconsideration.  The Commonwealth appeals, arguing that

_____

[1] Two counts of possessing a large capacity feeding device without a license, G. L. c. 269, § 10 (m); two counts of assault by means of a dangerous weapon, G. L. c. 265, § 15B (b); one count of unlawful possession of a firearm, G. L. c. 269, § 10 (a); and one count of possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h).

officers had reasonable suspicion to stop the defendant's car and conduct a protective sweep of the vehicle.  We reverse.

Background.  "We recite the facts as found by the motion judge."  Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 81 (2020).[2]  On October 20, 2022, Somerville police officer Roger Desrochers responded to several 911 calls regarding a fight in progress at a Papa John's restaurant on Somerville Avenue.  The callers reported that a delivery driver was arguing with other employees; yelling, screaming, and showing a gun.[3]  On speaking to witnesses at the Papa John's, Desrochers received a description of the driver as a Middle Eastern male with dark skin operating a white Toyota Corolla, license plate 29ZK58.  Witnesses reported that the driver had left the scene in the

_____

[2] Although the motion judge's factual findings were sufficient to permit us to resolve the appeal, it would have been helpful to have had findings on what testimony the motion judge found credible and not just the one fact he declined to find.  See Commonwealth v. Rodriquez, 70 Mass. App. Ct. 904, 904 (2007) ("Although the motion judge's factual findings are sparse, the essential dispositive facts are not contested and permit us to resolve the appeal without remand for additional factual findings").

[3] Desrochers testified that the witnesses said that the driver pulled a firearm out of the center console of his vehicle and then a second time reached into the center console and took out the gun.  Desrochers also testified that he reported to his fellow officers that the firearm would be in the center console. The motion judge did not make any findings concerning this testimony.

2

white Toyota, heading east on Somerville Avenue. Desrochers radioed this information to other officers on patrol.

"Shortly after dispatch relayed a description of the vehicle," Officer Samir Messaoudi saw a white Toyota Camry with license plate number 2NVX58 traveling east on Somerville Avenue one mile away from Papa John's.[4] Based on these observations, Messaoudi stopped the Toyota.[5] He ordered the driver, the defendant, to get out of the vehicle and stand at the back of the vehicle. Messaoudi did not handcuff or pat frisk the defendant.

Officer Thomas Lambert arrived shortly after the stop and handcuffed the defendant but did not pat frisk him. Lambert conducted a "protective pat frisk of the driver area" of the vehicle. During the vehicle search, he found a firearm in the center console and a magazine with ammunition in the glovebox.

---

[4] The motion judge found that the defendant's vehicle's license plate was 29VX58. This appears to be a typographical error. The Commonwealth and the defendant agree in their briefs that the defendant's license plate was 2NVX58, which is consistent with the testimony at the motion hearing. In the absence of any conflict in the record, the motion judge's finding regarding this portion of the sequence of events is clear error. See Commonwealth v. Motta, 424 Mass. 117, 121 (1997), citing Commonwealth v. Bakoian, 412 Mass. 295, 297-298 (1992).

[5] There was no testimony that the defendant matched a physical description of the suspect or that he made any furtive gestures while in the vehicle. There was testimony that he was the only person in the vehicle, but the motion judge did not make a finding on that issue.

3

The motion judge found that "[n]either Officer Desrochers nor Officer Messaoudi advised the defendant of his Miranda warnings. [Officer] Lambert stated that another officer, who did not testify, read the warnings to the defendant but I do not find that the Miranda warnings were read to the defendant."[6]  See Miranda v. Arizona, 384 U.S. 436, 444-445 (1966).

Discussion.  "In reviewing a ruling on a motion to suppress, we review independently the application of constitutional principles to the facts found, but we accept the judge's subsidiary findings of fact absent clear error" (quotation and citation omitted).  Commonwealth v. Kaplan, 97 Mass. App. Ct. 540, 542 (2020).  The Commonwealth accepts the findings of the motion judge but argues that the judge erred in concluding that there was not reasonable suspicion (1) to justify the stop of the defendant's vehicle, and (2) to conclude that the defendant was armed and dangerous.  We agree.

1.  The stop.  "Police may effect a motor vehicle stop based on reasonable suspicion of criminal activity." Commonwealth v. Barreto, 483 Mass. 716, 718 (2019).  See Commonwealth v. Ancrum, 65 Mass. App. Ct. 647, 651 (2006). "When, as here, a police radio broadcast directs officers to make an investigatory stop of a motor vehicle, the stop is

---

[6] The defendant does not raise any Miranda issue on appeal.

4

lawful only if the Commonwealth establishes both the indicia of reliability of the transmitted information and the particularity of the description of the motor vehicle." Commonwealth v. Lopes, 455 Mass. 147, 155 (2009).[7] A dispatch description of a motor vehicle may be sufficiently particular where it contains information regarding the make, model, color, or license plate registration number of the vehicle; or identifying characteristics of the occupants. See Commonwealth v. Anderson, 461 Mass. 616, 621, cert. denied, 568 U.S. 946 (2012). A vehicle's geographic and temporal proximity to a crime may also be considered. See Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 13 (2023); Commonwealth v. Acevedo, 73 Mass. App. Ct. 453, 458, S.C., 455 Mass. 1013 (2009); Ancrum, supra at 652-653.

Here, Messaoudi saw a white Toyota sedan traveling in the direction reported by witnesses, on the same avenue, "shortly after" the underlying events occurred. Though the defendant's Toyota was a different model and his license plate number was

_____

[7] The defendant does not challenge the reliability of the information reported to and then disseminated among the responding officers. We note that the 911 calls leading to the radio dispatches satisfy the basis of knowledge and veracity requirements of the two-pronged Aguilar-Spinelli test. Commonwealth v. Manha, 479 Mass. 44, 46 (2018). See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). Given that the callers identified themselves to police, were later interviewed by Desrochers, and witnessed the altercation themselves, the witnesses had both a basis of knowledge and satisfied the veracity prong. See Lopes, 455 Mass. at 156.

5

not an exact match -- it shared the first number and last two numbers, with the middle characters different -- "[r]easonable suspicion does not require 'a full match-up of all parts of the description.'"  Lopes, 455 Mass. at 158, quoting Commonwealth v. Emuakpor, 57 Mass. App. Ct. 192, 198 (2003).  See Ancrum, 65 Mass. App. Ct. at 653 (reasonable suspicion still existed despite differences in reported color of vehicle and number of occupants); Anderson, 461 Mass. at 624 (sufficient corroboration to justify stop even where license plate number off by one number and color of car was reported as "silver or gold").  We must also consider that the reported crime involved a person threatening coworkers with a firearm.  See Commonwealth v. Stoute, 422 Mass. 782, 791 (1996) ("test for determining reasonable suspicion should include consideration of the possibility of the possession of a gun, and the government's need for prompt investigation" [citation omitted]).  In light of the detail in the broadcast and the corroborating details witnessed by Messaoudi, reasonable suspicion existed to stop the defendant's vehicle.

2.  The sweep of the vehicle.  "During a stop for which there is constitutional justification, a patfrisk is permissible only where an officer has reasonable suspicion that the suspect is armed and dangerous" (citation omitted).  Commonwealth v. Torres-Pagan, 484 Mass. 34, 36 (2020).  That suspicion must be

6

"based on specific articulable facts."  Id. at 39.  The motion judge found that there was not a reasonable suspicion that the defendant was armed and dangerous based on the defendant's compliance and lack of furtive gestures while interacting with police officers.  The judge further concluded that the facts that no officer performed a patfrisk of the defendant or read him his Miranda rights "belie any belief the police suspected the defendant was armed and dangerous."

The test for reasonable suspicion is objective. Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 748 (2021), cert. denied, 143 S. Ct. 135 (2022); Commonwealth v. Cruz, 459 Mass. 459, 462 n.7 (2011).  Therefore, whether the individual police officers were in fact afraid that the defendant was armed and dangerous has no bearing on the inquiry.  Rather, the question is whether a "reasonably prudent" person in the officer's position would have the requisite safety concerns. See Commonwealth v. Silva, 366 Mass. 402, 406 (1974).  Here, the officers had responded to a report that a man who engaged in an "argument" with several others at a Papa John's had displayed a gun.  While the defendant may have been compliant once intercepted by police, a reasonably prudent officer would have been justifiably concerned that the defendant still posed an "imminent threat" to public safety.  Ancrum, 65 Mass. App. Ct. at 654.  See id. at 655 (exit order and patfrisk justified where

7

police reasonably believed suspects were involved in recent shooting); Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 558 (2002) (patfrisk of defendant justified for officer safety where police responding to reports of shots fired).  Cf. Commonwealth v. Alvarado, 423 Mass. 266, 270-271 (1996) (report of carrying firearm without additional factor of threat to public safety does not provide reasonable suspicion).

Accordingly, we conclude that the officers had reasonable suspicion both to stop the defendant and to conduct a protective sweep of the vehicle.  We reverse the order allowing the motion to suppress.

So ordered.

By the Court (Henry,
D'Angelo & Hodgens, JJ.[8]),

Paul Little

Clerk

Entered:  September 9, 2024.

---

[8] The panelists are listed in order of seniority.